## GILL et al. v. MESTA MACH. CO.

### Civ. A. No. 4508.

District Court, W. D. Pennsylvania.

Feb. 20, 1947.

Harry Alan Sherman, of Pittsburgh, for plaintiffs.

Reed, Smith, Shaw & McClay, John C. Bane, Jr., Nicholas Unkovic and Seward H. French, Jr., all of Pittsburgh, for defendants.

GIBSON, District Judge.

The court, after hearing and consideration, makes the following Findings of Fact and Conclusions of Law:

## Findings of Fact

1. Mesta Machine Company (hereinafter called the "Company") is a corporation organized and doing business in the County of Allegheny, in the Borough of West Homestead, Pennsylvania, the principal business of which is the manufacture of steel mill equipment, including rolling mills and accessory equipment such as shears, roll lathes, grinders, accumulators, extrusion presses, and forge presses. (Complaint, Par. 3; Answer Par. 3, N.T. 58, 59.)

2. In the process of manufacturing steel mill equipment, rolling mills, shears, grinders, accumulators, and presses, the Company has established a machine shop department, the purpose of which is to receive rough castings and forgings coming from the Company's foundry or forge shop, and machine the castings and forgings to certain drawing tolerances in preparation for final assembly. (N.T. 59, Defendant's Exhibit A.)

3. Various departments or subdivisions of the machine department were established by the Company for its convenience and for the proper grouping of machine tools in separate units. Among such departments or subdivisions of the machine department customarily recognized, are the 280' Extension, the Upper End, the Small Aisle, the 900' Extension, the Lower End, the Ordnance Department—Upper End and Lower End. (Defendant's Exhibit A, Defendant's Exhibit Z, N.T. 42–56.)

4. During the periods hereinafter stated, the plaintiffs were salaried foremen and had as their primary duty the management of a department or subdivision of the machine department of the Company as follows:

### 280' Extension

Edward J. Gill, July 1, 1941, to January 1, 1943.

G. F. Ely, January 1, 1943, to June 28, 1945.

Clinton O'Shell, January 1, 1944, to June 28, 1945.

W. J. Mayer, January 1, 1944, to June 28, 1945. (N.T. 40, 48, 561, 291, 391, 261.)

### Upper End

William Britton, July 1, 1941, to June 28, 1945.

J. C. Hornfeck, January 1, 1942, to June 28, 1945. (N.T. 51, 414, 494, 261.)

### Small Aisle

J. J. Schubert, October 1, 1940, to June 28, 1945.

H. C. Carlson, January 1, 1939, to June 28, 1945.

A. A. Petrichek, October 1, 1942, to June 28, 1945. (N.T. 53, 263, 267, 458, 176, 261.)

### 900' Extension

Edward J. Gill, January 1, 1943, to June 28, 1945. (N.T. 55, 126, 146, 148, 261.)

### Lower End

D. M. Wilson, January 1, 1944, to June 28, 1945. (N.T. 56, 234, 261.)

### Ordnance—Lower End

Walter Weir, January 1, 1942, to June 28, 1945.

F. C. Menking, January 1, 1942, to June 28, 1945. (N.T. 57, 474, 424, 261.)

### Ordnance—Upper End

T. P. Daugherty, October 1, 1941, to June 28, 1945.

J. A. Hill, October 1, 1941, to June 28, 1945. (Defendant's Exhibit 2 and testimony; N.T. 57, 314, 424, 261.)

5. During the foregoing periods of time the plaintiffs customarily and regularly directed the work of other employees in the department or subdivision named. (N.T. 46–54, 128, 138, 145, 154, 233, 268, 293, 486, 528, 549, 588, 690, 691.)

6. During the foregoing periods of time the suggestions and recommendations of the plaintiffs as to the firing of other employees were given particular weight. (N.T. 161, 211, 213–14, 250–253, 308, 275, 274–5, 372–3, 397, 466, 626–7, 633, 646–7, 642–6, 652, 487, 488, 489.)

7. During the foregoing periods of time the recommendations and suggestions of the plaintiffs as to advancement and promotion of other employees were given particular weight. (N.T. 134, 351, 531–33, 570.)

8. During the foregoing periods of time the recommendations and suggestions of the plaintiffs as to other change in status of other employees were given particular weight. (N.T. 28, 132, 230, 607, 114–5, 161, 207, 93, 96, 296, 398, 419, 472, 571–3.)

9. During the foregoing periods of time each of the plaintiffs customarily and regularly exercised discretionary powers. (N.T. 127–8, 192, 156, 240, page references in Requests for Findings 5–8.)

10. During the foregoing periods of time each of the plaintiffs was paid on a monthly salary basis which exceeded $30 per week, and was paid and received the following amounts:

Clinton O'Shell, January 1, 1944, to June 28, 1945, $425.00 per month, plus 10% bonus (Defendant's Exhibit C; N.T. 261).

G. F. Ely, January 1, 1943, to June 28, 1945, $425.00 per month plus 10% bonus (Defendant's Exhibit D).

W. J. Mayer, January 1, 1944, to June 28, 1945, $425.00 per month plus 10% bonus (Defendant's Exhibit E; N.T. 261).

William Britton, July 1, 1941, to December 31, 1941, $363.00 per month plus 6% bonus

January 1, 1942, to April 15, 1942, $425.00 per month plus 6% bonus

April 16, 1942, to June 28, 1945, $425.-00 per month plus 10% bonus (Defendant's Exhibit F; N.T. 261).

C. Hornfeck, January 1, 1942, to April 15, 1942, $425.00 per month plus 6% bonus

April 16, 1942, to June 28, 1945, $425.-00 per month plus 10% bonus (Defendant's Exhibit G; N.T. 261).

H. C. Carlson, January 1, 1939, to September 30, 1939. $270.00, per month

October 1, 1939, to November 30, 1940, $300.00 per month

December 1, 1940, to March 31, 1941, $330.00 per month plus 6% bonus

April 1, 1941, to December 31, 1941, $363.00 per month plus 6% bonus

January 1, 1942, to April 15, 1942, $425.00 per month plus 6% bonus

April 16, 1942, to June 28, 1945, $425.-00 per month plus 10% bonus (Defendant's Exhibit H; N.T. 261).

A. A. Petrichek, October 1, 1941, to December 31, 1941, $363.00 per month plus 6% bonus

January 1, 1942, to April 15, 1942, $425.00 per month plus 6% bonus

April 16, 1942, to June 28, 1945, $425.-00 per month plus 10% bonus (Defendant's Exhibit I; N.T. 261).

J. J. Schubert, October 1, 1940, to November 30, 1940, $300.00 per month

December 1, 1940, to March 15, 1941, $330.00 per month plus 6% bonus

March 16, 1941, to December 31, 1941, $363.00 per month plus 6% bonus

January 1, 1942, to April 15, 1942, $425.00 per month plus 6% bonus

April 16, 1942, to June 28, 1945, $425.-00 per month plus 10% bonus (Defendant's Exhibit J; N.T. 261).

E. J. Gill, July 1, 1941, to December 31, 1941, $363.00 per month plus 6% bonus

January 1, 1942, to April 15, 1942, $425.00 per month plus 6% bonus

April 16, 1942, to June 28, 1945, $425.-00 per month plus 10% bonus (Defendant's Exhibit K; N.T. 261).

D. M. Wilson, January 1, 1944, to June 28, 1945, $425.00 per month plus 10% bonus (Defendant's Exhibit L; N.T. 261).

Walter Weir, January 1, 1942, to April 15, 1942, $425.00 per month plus 6% bonus

April 16, 1942, to June 28 ,1945, $425.-00 per month plus 10% bonus (Defendant's Exhibit M; N.T. 261).

T. P. Daugherty, October 1, 1941, to December 31, 1941, $363.00 per month plus 6% bonus

January 1, 1942, to April 15, 1942, $425.00 per month plus 6% bonus

April 16, 1942, to June 28, 1945, $425.00 per month plus 10% bonus (Defendant's Exhibit N; N.T. 261).

J. A. Hill, October 1, 1941, to December 31, 1941, $363.00 per month plus 6% bonus

January 1, 1942, to April 15, 1942, $425.00 per month plus 6% bonus

April 16, 1942, to June 28, 1945, $425.00 per month plus 10% bonus (Defendant's Exhibit O; N.T. 261).

C. Menking, January 1, 1942, to April 15, 1942, $425.00 per month plus 6% bonus

April 16, 1942, to June 28, 1945, $425.00 per month plus 10% bonus (Defendant's Exhibit P; N.T. 261).

11. During the foregoing periods of time none of the plaintiffs performed work of the same nature as that performed by nonexempt employees for hours exceeding 20% of the number of hours worked in the workweek by the nonexempt employees under the plaintiffs' direction.

O'Shell, N.T. 46–47, 547, 549, 550, 569, 564; Ely, 46, 47, 291, 305, 285, 293, 309; Mayer 46–47, 376, 381; Britton 53, 414, 409–11, 888, 892, 894–5, 898–9; Hornfeck 53, 494, 499, 500, 529, 660; Carlson 54, 269–70, 272–3; Petrichek 54, 458, 452, 453, 454, 464, 718, 731–3, 736, 745–6; Gill 156, 158, 159, 677–8, 690–91; Schubert 54, 204, 208–9, 217–18, 808 810; Weir 58, 72, 73, 476, 478, 479, 484, 485, 486, 901, 979; Wilson 55–6, 235–6, 239–40, 249–50; Hill 58, 594, 599, 600, 606, 617, 707, 713, 222, 230, 231½, 920–21; Daugherty, 58, 344–45, 347–8, 360–2, 367; Menking 424, 427, 428, 440, 441, 443, 872, 910, 912.

12. The foregoing periods of time when plaintiffs were salaried foremen, are the only periods of time material to this case and at all other times prior to the date of bringing this action, viz., June 28, 1945, the plaintiffs were hourly-paid employees and were paid overtime as required by the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. (Joint Stipulation N.T. 261; Exhibits "C" through "P"; Exhibit "Q").

13. Plaintiffs were all employees of defendant during the years 1939 to 1945 and were engaged in work admittedly in interstate commerce.

14. The machine shop was operated on a twenty-four-hour basis and during each of three successive eight-hour shifts, a general foreman was in charge thereof.

15. Plaintiffs had no authority to hire employees.

16. Wage rates and increases thereon are recommended by the superintendent and approved by a "wage committee" consisting of three officers of the company, but in no wise concerning plaintiffs.

17. No notices or orders were ever given by any of the plaintiffs in the form of sign-postings on bulletin boards in the machine shop.

18. Plaintiffs were never called to attend any supervisory or policy meetings with their superior officials.

19. The plaintiffs were not required to keep, nor did they actually keep, any merit ratings of the employees under their supervision.

## Conclusions of Law

I. This Court has jurisdiction of the subject matter of and the parties to this action pursuant to the provisions of Section 17 of the Fair Labor Standards Act of 1938.

II. All of the plaintiffs are executives as such term is defined and delimited by regulations of the Administrator and as stated in Section 13(a) of the Fair Labor Standards Act of 1938.

III. The plaintiffs are not entitled to overtime under Sections 6 and 7 of the Fair Labor Standards Act of 1938.

IV. The Complaint should be dismissed.

V. The defendant is entitled to costs, including witness fees and reporting charges.

## Discussion

This action has been brought by fourteen employees of the Mesta Machine Company to recover alleged unpaid overtime compensation and liquidated damages pursuant to Sec. 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1060.

The defendant admits its employment of the plaintiffs, but asserts that each of them

was employed as a foreman and at work of such executive and administrative character as exempts their employment from the scope and effect of the Fair Labor Standards Act of 1938. By amendment of its Answer defendant asserted that the Statute of Limitations prevented recovery by plaintiffs for any period preceding six years next before the commencement of the action.

By stipulation it appears that the plaintiffs were each employed on a salary basis, as follows:

| | | | |
|---|---|---|---|
| E. J. Gill | from July 1, 1941 | to | June 28, 1945 |
| F. C. Menking | " January 1, 1942 | " | June 28, 1945 |
| J. A. Hill | " October 1, 1941 | " | June 28, 1945 |
| William Britton | " July 1, 1941 | " | June 28, 1945 |
| D. M. Wilson | " January 1, 1944 | " | June 28, 1945 |
| G. F. Ely | " January 1, 1943 | " | June 28, 1945 |
| A. A. Petrichek | " October 1, 1941 | " | June 28, 1945 |
| J. C. Hornfeck | " January 1, 1942 | " | June 28, 1945 |
| J. J. Schubert | " October 1, 1940 | " | June 28, 1945 |
| W. J. Mayer | " January 1, 1944 | " | June 28, 1945 |
| H. C. Carlson | " January 1, 1939 | " | June 28, 1945 |
| Clinton O'Shell | " January 1, 1944 | " | June 28, 1945 |
| Walter Weir | " January 1, 1942 | " | June 28, 1945 |
| T. P. Daugherty | " October 1, 1941 | " | June 28, 1945 |

It was further stipulated that during the aforesaid periods plaintiffs worked weekly schedules which would have required defendant to compensate them at one and one-half their regular rate of pay if said plaintiffs were subject to the overtime provision of the Fair Labor Standards Act of 1938.

By agreement of counsel for plaintiffs and for the defendant it was determined that the court should first pass upon the defendant's claim of exemption from the overtime provision of the Act of 1938, and if the decision was against the defendant upon said claim that the matter should be turned over to a special master to consider plaintiffs' claim for overtime and consequent liquidated damages.

The Administrator's regulation defining the term "bona fide executive" under the Act of 1938 is as follows:

"§ 541.1 Executive, The term 'employee employed in a bona fide executive * * * capacity' in Section 13(a) (1) of the Act shall mean any employee

"(a) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(b) who customarily and regularly directs the work of other employees therein, and

"(c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(d) who customarily and regularly exercises discretionary powers, and

"(e) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging or other facilities), and

"(f) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction: Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

Each of the plaintiffs was a foreman in the machine shop department of the Mesta Machine Company. That Company was a large manufacturer of rolling mills and rolling mill equipment and other types of heavy equipment and machinery for industry. It functioned in several different gen-

eral branches, of which the Machine Shop was one. It was the duty of its journeyman employees to take rough castings from the foundry or rough forgings from the forge shop and machine them to certain tolerances in preparation for final assembly.

In the finishing operations of the Machine Shop the tools were permanently grouped in separate geographical units, known and recognized in the Shop as "The 280' Extension," "The Upper End", "The Small Aisle", "The 900-foot Extension", "The Lower End", and "The Ordnance". (See Defendant's Exhibit A.) During the times involved in this action the Machine Shop was operating in three shifts each day, and the plaintiffs were each in charge of one of the shifts.

In testifying the plaintiffs were inclined to minimize their authority at the beginning of their examination, but as the examination progressed, and the issues were forgotten, some of them, who had first adopted a term used by their counsel and called themselves "file leaders", ended by calling themselves foremen or "bosses" of the section in which they were located. There can be no question but that each customarily and regularly had charge and supervision of operatives in the section to which he had been assigned, and that the limits of that section were well known.

In the Mesta Machine Company, as in most present-day corporations of any size, even the highest executive officers have no duty in respect to the hiring of employees, and none of the plaintiffs were charged with it. That function was confided to the personnel department. Nor had the ability to discharge employees been directly conferred upon plaintiffs. Some of them were even disposed to deny that their recommendations received any consideration from those who had the power to "fire". The defendant, during the war period, was in great need of skilled operators, and unless the offense was extreme, the authorized officers were reluctant to discharge any employee. However, some employees were discharged, and in several cases this result had followed the recommendations of the foremen plaintiffs. It is quite evident that their recommendations as to discharge or advancement of an employee were given particular weight.

The requirement of the Regulation, in the test of the exemption of an employee as an executive, that such executive regularly and customarily exercise discretionary powers, is perhaps not so apparent as is the existence of some of the other requirements in the instant case. And yet it is plain that the foremen did customarily exercise discretionary powers. For example, when an employee suggested that time enough had not been allowed for the completion of a particular task, the foreman used such powers in either taking the complaint, or refusing to take it, to his superiors. He also exercised such powers when he ordered an imperfect casting to be removed from the machine. When passing upon the application of an employee to leave his task before the end of his day, the foreman was exercising such power.

No dispute exists as to the next requirement for exemption. It is not denied, and is proven, that each plaintiff was paid more than $30 per week on a salary basis.

It is claimed on behalf of each of the plaintiffs that he worked more than twenty percentum of his work-day at work of the same nature as that performed by non-exempt employees. While plaintiffs did some work similar to that of the employees under them, it was not such as to make them non-exempt, nor did it amount to twenty percentum of that performed by the other mechanics. The foreman, in performing such labor, did so as a part of his supervisory power. If on one of his continuous trips through the shop he perceived an operator to be in difficulty he would stop and explain the operation required, and occasionally, for the purpose of instruction, would operate the machine. Such operation, as the Administrator himself has stated: "The operation of a machine under such circumstances, while the employee being instructed watches the operation, is an essential part of the supervisory duties and is exempt work." See Anderson v. Federal Cartridge Corporation, 62 F.Supp. 775, affirmed in 156 F.2d 681.

While certain of the plaintiffs claimed that such supervisory operation occupied

about two hours each day, their claims were not sustained by other employees who testified upon call of the plaintiffs. These witnesses were journeymen mechanics, who testified that while the foremen occasionally had operated their machines to instruct them, that such operations were not frequently needed in view of their years of experience. It is inconceivable to the court that any such time as claimed was occupied in instruction in view of the many other duties required of the foremen.

Counsel for the plaintiffs has commented upon the proof that plaintiffs never received any instruction as to the scope of their duties and their authority. These men were all old and experienced workers in the Mesta plant, and each knew, and stated that he knew, his duties from observation of his predecessors.

Counsel also has commented upon the failure to instruct the plaintiffs as to the policy of the Company in respect to grievances of the employees, and the fact that they were not called to participate in meetings of the higher officers. These facts possibly furnish some basis for argument, but the Regulations do not make them necessary to qualify foremen as exempt employees.

Finding, as has the court, that plaintiffs were salaried employees and executives of the defendant and as such exempt from the over-time provision of the Fair Labor Standards Act, an order will be made that judgment be entered in favor of the defendant.