Frank M. GRAVEN, Plaintiff,

v.

Arthur PASA, Defendant, Appellants,

USIBELLI COAL MINES, INC., Intervenor,

v.

GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, Ltd., a corporation, and Potomac Insurance Company, a corporation, d/b/a General Accident Group, Appellees.

No. 19975.

United States Court of Appeals Ninth Circuit.

Jan. 18, 1966.

Cleary S. Cone, Ellensbury, Wash., Gerald Bangs, Schroeter, Farris, Bangs & Horowitz, Donald J. Horowitz, Seattle, Wash., for appellants.

John Gavin, Gavin, Robinson, Kendrick, Redman & Mays, Yakima, Wash., for appellees.

Before HAMLEY, JERTBERG and MERRILL, Circuit Judges.

JERTBERG, Circuit Judge:

Before us is an interlocutory appeal involving questions as to the extent of coverage under a contract of liability insurance.

The jurisdiction of the district court is based on diversity of citizenship of the parties, 28 U.S.C. § 1332(a), and is not questioned on this appeal.

In order to more clearly understand the issues of law presented, it is necessary to review the record of proceedings leading up to this appeal.

The principal action commenced with the filing of a complaint by Frank M. Graven, one of the appellants, hereinafter "GRAVEN", against Arthur Pasa, also an appellant, hereinafter "PASA", seeking a money judgment for personal injuries, hospital and medical expenses

alleged to have been sustained by Graven through the negligence of Pasa.

The complaint in substance alleges: That on December 6, 1961, Graven was employed as a coal miner by Usibelli Coal Mines, Inc., intervenor in the main action and one of the appellees, hereinafter "USIBELLI." Graven worked at the underground mining operation which was one of two mining operations conducted by Usibelli at Suntrana, Alaska, the other being an open pit or coal stripping operation located about two miles from the underground coal mine. Pasa was a foreman and supervisory employee of Usibelli and was so employed on December 6, 1961.

On that day Pasa inspected a proposed work area and directed Graven and other employees to enter such area and mine coal in it. Soon after Graven entered the area the roof collapsed and Graven was injured. The complaint alleges that Pasa was negligent in conducting his inspection, in ordering Graven to work in the designated area which Pasa knew or should have known was in fact an unsafe place to work.

Usibelli was permitted to file its complaint in intervention. Its complaint in substance alleged that by reason of the alleged negligence of Pasa and the resultant injuries and damages alleged to have been sustained by Graven, and by reason of the Alaska Workmen's Compensation Act, it had been constrained to pay to Graven to the date of filing its complaint the sum of $10,673.37, and may well be constrained to pay additional sums in the future. Usibelli prayed for judgment against Pasa for all sums which it had paid and might be required to pay to Graven under the Alaska Workmen's Compensation Act, together with costs and reasonable attorney's fees.

Pasa filed his answer to the complaint of Graven and to the complaint in intervention of Usibelli, and denied that he was in any manner negligent. The answer contained an affirmative defense that Graven's injury was proximately caused or contributed to by Graven's negligence.

Pasa also filed a third party complaint against General Accident Fire and Life Assurance Corporation, Ltd., and Potomac Insurance Company, a corporation, d/b/a General Accident Group, appellees, hereinafter "INSURANCE COMPANY". The third party complaint filed by Pasa against the Insurance Company in substance alleged that at the time of the injuries and damages alleged to have been sustained by Graven there existed a contract of insurance coverage between the Insurance Company and Usibelli which, among other things, insured Usibelli and any executive officers, directors, or stockholders thereof against liability for bodily injury occurring as the result of negligence on the part of any of the insured, and in which the Insurance Company agreed to pay on behalf of the insured any amounts which the insured should be legally obligated to pay as damages for bodily injury proximately caused by the insured. It is further alleged that Pasa was an insured within the definition contained in the insurance contract and that the contract provided that the Insurance Company, in the event of any action for damages for alleged bodily injury resulting from the negligence of the insured, would defend any suit against the insured even if such suit were groundless, false or fraudulent, and that Pasa had tendered to the Insurance Company the complaint of Graven and the complaint in intervention of Usibelli, and had tendered to the Insurance Company the defense of the action. It was further alleged that the Insurance Company had refused to undertake the defense and denied any responsibility and liability to Pasa in any respect. Pasa prayed for an order requiring the Insurance Company to defend and to pay all the expenses of the action brought against him by Graven and Usibelli and for judgment against the Insurance Company for all amounts, if any, awarded to Usibelli up to the limits of liability contained in the insurance policy, and for judgment for such additional sums for which Pasa may become liable.

The Insurance Company answered the third party complaint and admitted the

issuance of the policy to Usibelli, and denied that Pasa was an insured thereunder.

At the pretrial conference the Insurance Company moved the court for a separate trial on the issues between it and Pasa. All parties agreed that those issues should be tried separately to the court without a jury. A pretrial order to that effect was entered.

Following trial to the court, the court dismissed with prejudice the third party complaint filed by Pasa, holding in substance that Pasa was not an assured under the contract of insurance issued to Usibelli, and judgment was entered accordingly. Graven and Pasa appealed.

The district court certified that the judgment entered by it involved a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate determination of the litigation. Appellants applied to this court for permission to file an immediate appeal, which application was granted.

The pertinent provisions of the contract of insurance insured Usibelli as the named insured, and any executive officer, director or stockholder thereof while acting within the scope of his duties as such, and any organization or proprietor with respect to real estate management for the named insured, against liability for bodily injury occurring as a result of negligence on the part of any of said insured, and to pay on behalf of the insured any amount which the insured should be legally obligated to pay as damages because of bodily injury proximately caused by the negligence of the insured.

The district court found as facts: That on December 6, 1961, Pasa was an underground foreman employed by Usibelli; was in specific charge of the underground mining operation at the Suntrana site, which was one of two work sites of the mining operations of Usibelli; he was not an officer, director or stockholder of Usibelli; there were other foremen equal in status and salary to Pasa; Pasa was subject to the supervision of the general manager and the general superintendent of Usibelli, as well as the officers of Usibelli; his duties included general supervision of the miners' work on both the day and night shifts; general supervision of the tipple crew with an assistant foreman on day shift; general supervision of the powerhouse crew on night shift only; lay out of work assignments for the miners; and inspection of underground mining operations, all of which was only at the Suntrana site. The district court concluded that Pasa was not, on the day in question [December 6, 1961], an "executive officer, director or stockholder of Usibelli Coal Mines, Inc.", and was not at said time a "proprietor with respect to any real estate management for Usibelli", and was not an insured under the insurance policy issued by Insurance Company.

While appellants specify as error that the district court erred in its conclusions of law above mentioned on the grounds that such conclusions are contrary to the facts and to the court's findings of fact, and contrary to the law applicable to the facts, it is clear that their contention is only that the court erred as a matter of law in concluding that Pasa was not an "insured" under the contract of insurance between the Insurance Company and Usibelli. This is made clear by the following appearing in appellant's reply brief:

"Finally the appellants wish to make it clear that they have no argument with the Findings of Fact made by the trial court, * * *. Appellants would urge that, accepting the Findings as made, nevertheless the Conclusions of Law and the Judgment are, on the basis of the Findings of Fact and the record, not apt, and are indeed erroneous." (P. 11).

Thus there is presented to us the same question of law as was presented to the district court:

Was Pasa an "insured" under the contract of insurance in light of the facts found to be true by the district court?

Appellant concedes that Pasa was not a director or stockholder of Usibelli. Hence the ultimate question thus posed requires as to determine whether Pasa was an "executive officer" and "acting within the scope of his duties as such", or a "proprietor with respect to real estate management" for Usibelli at the time of the commission of the acts of alleged negligence which caused the injury and damage to Graven.

From our study of the record and the authorities cited, we are satisfied that the district court did not err as a matter of law in concluding that Pasa was not an insured. Under the unquestioned findings of fact, Pasa was an underground foreman at one of the two work sites of the mining operations of Usibelli; there were other foremen equal in status and salary to Pasa; and Pasa was subject to the supervision of the General Manager and the General Superintendent of Usibelli, as well as the officers of Usibelli.

It is to be borne in mind that we are called upon to construe the language of a contract of insurance between the Insurance Company and Usibelli, who are the only parties to the contract. It is also to be noted that the case does not involve the liability of Usibelli to Graven for the acts of Pasa under the doctrine of *respondeat superior,* nor is it a case in which public policy may impel a broad interpretation of language in a statute in order to achieve the purposes thereof. Appellants make no contention that the language used in the pertinent clause of the policy is ambiguous. Our task, therefore, is to determine the intention of the Insurance Company and Usibelli in the light of the language employed by them. The parties to the insurance contract

agreed that coverage would extend to Usibelli as the insured, and that the word "insured" includes the named insured and also includes any executive officer, while acting within the scope of his duties as such, and any proprietor, with respect to real estate management for Usibelli.

In our view to construe the term "executive officer" or the phrase "proprietor, with respect to real estate management" to include one with the duties and responsibilities of Pasa, as reflected in the findings of fact, would do violence to the language employed by the parties to the contract.

In support of their contention that Pasa was an "insured", appellants rely on: (1) a series of cases [1] construing the word "executive" as that word is used in the Fair Labor Standards Act; (2) cases [2] construing the term "management representative" as used in State Workmen's Compensation Acts; (3) a case [3] involving the term "executive duties" as used in a contract of employment; (4) a criminal case [4] construing the term "executive officer" as used in the Political Code of the State of California; and (5) a case [5] holding that service of process against an insurance company could be made upon an employee of the company performing certain executive duties.

Our review of the cases relied upon by the appellants compels us to state that we find them to be inapposite.

In Bruce v. Travelers Insurance Company, 266 F.2d 781 (5th Cir. 1959), the court was called upon to construe a public liability insurance policy issued by the Travelers Insurance Company to the Gulf Refining Company. The policy provided extended coverage for "any execu-

---

1. Cintron Rivera v. Bull Insular Line, C.C.A., Puerto Rico, 164 F.2d 88, 90; Clougherty v. James Vermor Co., D.C. Mich., 74 F.Supp. 364, 369; Gill v. Mesta Mach. Co., D.C.Pa., 69 F. Supp. 904, 907; Bender v. Crucible Steel Co. of America, D.C.Pa., 71 F.Supp. 420, 424; Steiner v. Pleasantville Constructors, 181 Misc. 798, 46 N.Y.S.2d 120, 123.

2. Gordon v. Industrial Accident Commission of California, Cal., 249 P. 844, Affirmed 199 Cal. 420, 249 P. 849.

3. Arkansas Amusement Corporation v. Kempner, 182 Ark. 897, 33 S.W.2d 42.

4. People v. Kerns, 9 Cal.App.2d 72, 48 P.2d 750.

5. State Automobile Insurance Ass'n of Columbus v. Friedman, 122 Ohio St. 334, 171 N.E. 591, 592.

tive officer, director or stockholder * * * while acting within the scope of his duties." Bruce, employed by an independent contractor, was injured as a result of negligence on the part of an employee of Gulf Refining Company, one Collins. The theory of the complaint was that Collins was an executive officer of Gulf since he was "invested with the general conduct and control of the business of Gulf Refining" at the well location, where Bruce was injured. In the course of its opinion, it is stated:

"The term [executive officer] implies some sort of managerial responsibility for the affairs of the corporation generally and it imports a close connection with the board of directors and high officers of the company. Insurance policies should be construed liberally, but the words of a policy must be given the meaning they ordinarily bear. 'No strained or unusual construction should be given to any of the terms of a policy of insurance, in favor of the insurer or of the insured.' Empire Life Insurance Co. v. Gee, 1912, 178 Ala. 492, 60 So. 90, 92. Or, we add, in favor of a third party claimant.

"The distinction between an agent or employee and an officer is not determined by the nature of the work performed, but by the nature of the relationship of the particular individual to the corporation. The principle is well stated in 13 American Jurisprudence, par. 866, p. 854:

" 'The relationship of a person to a corporation, whether as officer or as agent or employee, is not determined by the nature of the services performed, but by the incidents of the relationship as they actually exist. * * * One distinction between officers and agents or employees of a corporation lies in the manner of their creation. An office is created usually by the charter or by-laws of the corporation, while an agency or employment is created usually by the officers. A further dis-

tinction may thus be drawn between an officer and an employee of a private corporation in that the latter is subordinate to the officers and under their control and direction.' " Bruce v. Travelers Insurance Company, supra, pp. 784–785.

In light of the unquestioned findings of fact of the district court, we find no error on the part of the district court in concluding that Pasa was not an "executive officer" of Usibelli. We have carefully examined the authorities relied upon by appellants in support of their contention that Pasa was an insured under the insurance policy because he was a "proprietor, with respect to real estate management" for Usibelli. In light of the findings of fact made by the district court we find no merit in such contention.

The judgment appealed from is affirmed.