[S. F. No. 11893.  In Bank.—September 30, 1926.]

## THOMAS GORDON et al., Copartners, etc., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, etc.; HESTER FINDLEY et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — SERIOUS AND WILFUL MISCONDUCT—EVIDENCE.—Where the managing representative of a copartnership engaged in excavating sand and gravel from a pit placed an employee at work in a position where a wall of sand and gravel at least twelve feet high was hanging over him, and the former knew, or ought to have known, that the wall was in imminent danger of caving in upon the employee and seriously injuring him, but took no precaution to prevent the same, and the wall caved in and was the proximate cause of the death of the employee, the employer was guilty of serious and wilful misconduct, within the meaning of the Workmen's Compensation Act authorizing the increase of an award one-half by reason thereof.

[2] ID.—MANAGING REPRESENTATIVE—DEFINITION.—A managing agent or a managing representative is one who has general discretionary powers of direction and control—one who may direct, control, conduct or carry on his employer's business or any part or branch thereof.

---

1.  Serious and wilful misconduct as bar to compensation, note, 4 A. L. R. 116.  See, also, 28 R. C. L. 789.

[3] ID.—FINDING OF MANAGEMENT — SUFFICIENCY OF EVIDENCE.— Where the evidence showed in such case that a representative of the employer was in full charge and control of the operations, exercising his own discretionary powers as to the operation of the cable and bucket and as to the time, place and circumstances under which the work of blasting the rock and sides of the pit was carried on, and who at the time of the accident alone gave orders to the workmen which resulted in the accident, the evidence was sufficient to sustain a finding that such party was a managing representative as that term is used in the Workmen's Compensaton Act.

---

(1) Workmen's Compensation Acts, C. J., p. 88, n. 12.   (2) Workmen's Compensation Acts, C. J., p. 88, n. 12.   (3) Workmen's Compensation Acts, C. J., p. 88, n. 12.

PROCEEDING in Certiorari to review an order of the Industrial Accident Commission awarding compensation for death. Award affirmed.

The facts are stated in the opinion of the court.

John F. Poole and Charles L. Chandler for Petitioners.

Warren H. Pillsbury and G. C. Faulkner for Respondents.

NOURSE, J., *pro tem.*—This is a proceeding in *certiorari* to review an order of the Industrial Accident Commission awarding compensation for the death of Charles P. Findley, who was killed during the course of his employment with the petitioners. The order of the respondent Commission carried an award in favor of the widow and children of the deceased and against the insurance carrier in the sum of $5,000, and an additional award against the employers of $2,500, based on a finding of serious and wilful misconduct. A writ of *certiorari*, issued out of the district court of appeal, second district, division one, to review the entire proceedings, and that court, on November 10, 1925, entered its judgment affirming the portion of the order covering the award of $5,000 and annulling the portion relating to the award of $2,500 against the employers. Upon the petition of the respondent, Industrial Accident Commission, the en-

tire cause was transferred to this court for hearing and decision.

Briefly, the facts of the case are that Gordon, Harrison and Russell were copartners doing business as Gordon & Harrison; they were engaged in crushing rock and excavating sand and gravel for commercial use, and in the course of their business employed the deceased in the excavation of a gravel-pit at Montrose, Los Angeles County; this gravel-pit was excavated by means of a large steel bucket pulled along a wire cable which could be swung from side to side so that the pit or "groove" could be widened as the increasing depth added to the danger of cave-ins from the overhanging sides. This pit had been excavated over a length of about four hundred feet with a varying width of from eight to thirty feet and to an irregular depth of from twelve to fifty feet. On the morning of the injury the day foreman of the copartnership, one Schienle, sent the deceased and three other men into the bottom of the pit to bore a hole and prepare a blast to loosen the gravel. At this point the pit was six or eight feet wide at the base with one wall about twenty-five feet high and the other about twelve feet high with a slight overhang. The material in the walls was loose sand and gravel with occasional large rocks which required drilling and blasting. Previous to the injury the men had blasted one of these rocks at the bottom of the pit, and immediately thereafter the foreman directed the men to go into the pit and bore into the side-wall for another blast. While they were engaged in this work the wall caved in and caught the deceased covering him, while standing upright, under five feet of gravel.

The evidence was in conflict as to the exact cause of the cave-in. Witnesses testified that the wall upon which the deceased was working was overhanging at the top, that it was perpendicular, or nearly so, and that it was within thirty degrees of perpendicular, and that the wall was composed entirely of soft gravel and sand. Witnesses testified that it commenced to cave from the top, others from the side, and others from the bottom. The opinion was expressed that the blasting of the rock at the bottom of the pit made this wall unsafe, and it is in the testimony that some of the workmen protested against going into the pit, that they told the foreman that it looked like

a "grave," that the foreman told his men that if they did not "shoot the bank" it would cave in on the bucket. It was also shown that the hazard which the men were compelled to take could have been avoided by an adjustment of the cable upon which the bucket was operated and that by this means the sides of the pit could have been shaved off. Testimony was offered to show that this safe method was not used by the employer because on several occasions the sides of the pit had caved in on the bucket causing considerable delay in the operations of the plant.

At this time the petitioners urge that the award of $2,500 against the individual members of the copartnership was in excess of the powers of the Commission because (1) The evidence is insufficient to support the finding of "serious and wilful misconduct" on the part of the employers, and (2) the evidence is insufficient to support the finding that the foreman in charge was a "managing representative" of the employer. [1] The first point was correctly disposed of by the district court in the opinion written by Mr. Justice Houser and concurred in by the entire court. (48 Cal. App. Dec. 522 [249 Pac. 844].) We adopt the portion of that opinion reading as follows: "With respect to the claimed 'serious and wilful misconduct' of the individual defendants, the finding by the respondent Commission was that: 'The said injury was proximately caused by the serious and wilful misconduct of the employer in this: A managing representative of said partnership, to wit, Walter J. Schienle, knowingly, placed the employee at work in a position where a wall of sand and gravel at least 12 feet high was hanging over him. That at said time said managing representative knew, or ought to have known, that said wall was in imminent danger of caving in upon the employee, and causing either serious injury to or the death of the employee; and that said managing representative took no precaution to prevent said wall from caving in upon the employee; that said wall of sand and gravel did cave in, and the caving in thereof was the proximate cause of the death of the employee.'

"It will be noted that the statute provides that the serious and wilful misconduct of the 'managing representative' of the employer shall be sufficient reason for increasing the award as much as $2,500, and that the findings by the Com-

mission in that regard in effect are that Walter J. Schienle was the managing representative of the employer.

"It is not contended by petitioners that the statute is lacking in its provisions to authorize an increase in the award where the facts of the case warrant it; but it is earnestly urged by petitioners that in the instant case the evidence is wholly insufficient to justify the conclusion that under a proper construction of the phrase, Walter J. Schienle was the 'managing representative' of the petitioners; or that, in fact, his conduct in connection with the accident was such that it was properly subject to adverse criticism from a legal standpoint. However, with respect to the latter specification, an examination of the transcript of the evidence received on the hearing before the Commission leads to the conclusion that it was ample to warrant the finding heretofore set forth herein, to-wit: that 'Walter J. Schienle knowingly placed the employee at work in a position where a wall of sand and gravel at least 12 feet high was hanging over him,' etc.

"That such action on the part of the employer toward an employee is sufficient to constitute 'serious misconduct' is settled in the case of *E. Clemens Horst Co.* v. *Industrial Accident Com.*, 184 Cal. 180, 188 [16 A. L. R. 611, 193 Pac. 105], where it is said: 'The first question presented is, then, Was the Commission justified in finding that the petitioner was guilty of "serious misconduct"?' There is no statutory definition of this term. In this connection we may again quote from Beven, page 401: 'To constitute "serious misconduct," it is probable that the legislature intended to signify conduct that an average workman in being guilty of, either would know, or ought to know, if he turned his mind to consider the matter, to be conduct likely to jeopardize his own and his fellow-workman's safety.' In our opinion the serious misconduct of an employer under our statute may be similarly defined. There should be no difference in principle between the degree of care required of an employer and that exacted from an employee. ' "Serious misconduct" of an employer must, therefore, be taken to mean conduct which the employer either knew, or ought to have known, if he had turned his mind to the matter, to be conduct likely to jeopardize the safety of the employees.'

"As shown by the result, it is clear that the action of the employer in placing the employee in a position where a wall of sand and gravel 12 feet high was hanging over him was 'conduct likely to jeopardize the safety' of the employee; and the finding by the Commission, supported by the evidence, was that if the managing representative did not know, he at least should have known, 'that such wall was in imminent danger of caving in upon the employee and causing either serious injury to or the death of the employee.'"

(2) With respect to the finding of the Commission that Schienle was a "managing representative" of the petitioners, Mr. Justice Curtis, dissenting from the majority of the court, said (p. 528): "The testimony of Schienle himself was as follows: 'Q. You were in charge of that gravel pit, were you? A. Yes, sir. Q. And you were so placed in charge by Gordon & Harrison, the defendant in this action? A. Yes, sir. Q. Who gave you your instructions on those occasions when Mr. Cobb was not there? A. I know what I was to do; it was my duty to start the plant, and do that every morning. It was a common occurrence for me to start the plant and keep it going. Q. At the time that this accident happened you were in full charge, weren't you? A. Yes, sir. Q. All orders concerning management of the work and starting were given by you? A. The running of the plant, yes, sir. Q. The whole plant and the pit? A. Yes, sir, the pit, not the plant, I had nothing to do with the office or the sending out of the trucks. Q. The production end of it was all under your management at that time? A. Getting the material out of the hole and putting it into the bunkers. Q. There was no one else in authority between you and the partners at that time, was there, on the place? Mr. Poole: Objected to, that is for the Commission to decide. Mr. Backus: Russell, Gordon, Harrison and Cobb was not there, you were in sole and complete charge of the plant, weren't you? A. Yes, sir.'

"Charles W. Russell, one of the petitioners, testified that 'he (Mr. Schienle) is the foreman in charge of the pit and that sort of thing when Mr. Cobb is there as well as when Mr. Cobb is not there. Of course, under Mr. Cobb's direction naturally.' The testimony shows without contradiction that Mr. Cobb, the superintendent, was rarely at the plant

when the work started in the morning. On the day in question, he did not arrive until after the accident happened. Mr. Schienle was the sole representative of petitioners at the place where the work was being carried on on that morning. He, and he alone, was in charge of the work, and as such directed the deceased to take his place in the pit, where he met his death. Under these circumstances, to hold that Schienle was not the managing representative of petitioners at the time deceased met his death, is, in my opinion, to emasculate the statute of its wise and humane purposes to protect employees from injuries sustained by reason of the serious and wilful conduct of the employer.''

The portions of the Workmen's Compensation Act requiring consideration read (Stats. 1917, p. 834, sec. 6b): ''Where the employee is injured by reason of the serious and wilful misconduct of the employer, or his managing representative, or if the employer be a partnership, on the part of one of the partners, or if a corporation, on the part of an executive or managing officer thereof,'' the amount of compensation recoverable shall be increased one-half. The section was amended in Statutes of 1919, page 912, by adding the words ''or general superintendent'' after the words ''managing officer'' where the employer is a corporation. In Statutes 1923, page 376, the section was again amended by adding '' (or a managing representative or general superintendent thereof) '' after the word ''partners.'' Prior to the latter amendment the expression ''managing officer,'' as applied to an officer of a corporation, was interpreted to mean ''a person in the corporation's employ, either elected or appointed, who is invested with the general conduct and control at a particular place of the business of a corporation.'' (*Horst Co.* v. *Industrial Accident Commission*, 184 Cal. 180, 190 [16 A. L. R. 611, 193 Pac. 105, 109].)

[2] We do not find that the expression ''managing representative'' has been subject to judicial interpretation. The expression is similar to the words ''managing agent,'' an expression which is frequently used in statutes relating to the taking of depositions of officers and employees of corporations and in statutes relating to the powers and liabilities of general agents of insurance concerns. In interpreting these statutes the general tendency of the authorities has-

been to draw a line of similarity between a managing agent and a general agent and to declare a managing agent to be one who is invested with general powers involving the exercise of judgment and discretion as distinguished from a special agent who acts in an inferior capacity and with limited powers and duties under a superior. Thus, a managing agent or a managing representative is one who has general discretionary powers of direction and control—one who may direct, control, conduct or carry on his employer's business or any part or branch thereof. In amending the Workmen's Compensation Act, as above noted, the legislature clearly intended to recognize the distinction between a managing representative and a general superintendent, both in relation to corporations and copartnerships, otherwise there would have been no reason for the addition of the words "general superintendent" and nothing more in the amendment of 1919.

[3] In the case before us it appears that Russell, one of the three partners, was in charge of the production of the material, while the other two partners gave their attention to other branches of the partnership business. A Mr. Cobb was employed as general superintendent with general charge of production under Mr. Russell. Schienle had full charge of the work of excavating the gravel out of the pit where the accident occurred. At times he was visited by both Russell and Cobb, who came to see how the work was getting along and often gave him instructions or suggestions as to the manner of operation of the plant. At all other times, however, he was in full charge and control of the operations exercising his own discretionary powers as to the operation of the cable and the bucket and as to the time, place and circumstances under which the work of blasting the rock and sides of the pit was carried on. On the morning of the accident neither of his superior officers had been at the pit, and Schienle had been in full charge and control of the work, and he alone gave the orders to the workmen which resulted in the accident. Under such circumstances we are satisfied the evidence fully justifies the finding of the respondent Commission that Schienle was a "managing representative" as that term is used in the Workmen's Compensation Act.

Other points which were raised in the district court of appeal and which are not seriously pressed here do not require consideration.

The order is affirmed.

Shenck, J., Richards, J., and Waste, C. J., concurred.