[L. A. No. 19075. In Bank. Nov. 14, 1944.]

BECHTEL McCONE PARSONS CORPORATION (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and IRA L. FULMER, Respondents.

Thelen, Marrin, Johnson & Bridges and Gardiner Johnson for Petitioner.

Everett A. Corten and Dan Murphy, Jr., for Respondents.

SCHAUER, J.—Petitioner seeks review and annulment of an award of respondent Industrial Accident Commission. Respondent Ira L. Fulmer, an employee of petitioner corporation, sustained an injury arising out of and occurring in the course of his employment. He claimed increased compensation under section 4553 of the Labor Code, which provides that ''The amount of compensation otherwise recoverable shall be increased one-half where the employee is injured by reason of the serious and wilful misconduct of any of the following: . . . (c) If the employer is a corporation, on the part of an executive, managing officer, or general superintendent thereof.'' The commission found that the injury was proximately caused by the serious and wilful misconduct of petitioner (a corporation) and awarded Fulmer increased compensation. We have concluded that such finding and award are unsupported by the evidence in that it was not shown that the misconduct which caused the injury was that of ''an executive, managing officer, or general superintendent'' of petitioner.

On July 21, 1942, Fulmer was employed by petitioner as a member of a crew of four or five men who operated a truck crane. The foreman of the crew, O. L. Sweet, acting under an oral order of one Chamberlain, directed the crew to proceed to the reclamation yard of the Standard Oil Company, about a mile from the site of the construction job on which they were employed, and there to load certain pipe onto a trailer. The specific capacity in which Chamberlain acted does not appear. Sweet testified that Chamberlain's order was ''To get this pipe from the reclamation yard, is all,'' that he received no specific orders as to how the loading of the pipe was to be done. At Sweet's direction the truck was parked on a sheet metal roadway under high tension electric wires which ran about 35 feet above the ground. Both Sweet and Fulmer knew that the wires were high voltage lines. The boom of the crane, about 60 feet long as then rigged, was lowered under these wires during the loading operation. The boom was so constructed that by the removal of sections it

could have been shortened from a length of 60 feet to a length of 5 or 10 feet. While Fulmer was holding the hook attached to the swinging boom such boom contacted the overhead wires and he was burned by electricity. Neither Sweet nor Fulmer, the only witnesses who testified at the hearing, observed the boom approaching the wires immediately before Fulmer was injured.

Sweet testified that he directed the driver to place the truck under the wires because "It was about the only place we could reach the pipe from"; the pipe was stacked among sand dunes and piles of material and the truck could be driven only on the sheet metal roadway which had been laid out, not by petitioner, but by the Standard Oil Company.

Section 7-5050 of the Electrical Safety Orders of the Industrial Accident Commission provides that "No person, firm or corporation, or agent of same, shall require or permit any employee to perform any function in proximity to high-voltage lines; . . . or to . . . operate . . . any tools, machinery . . . (including . . . hoisting equipment) unless and until danger from accidental contact with said high-voltage lines has been effectively guarded against in the manner hereinafter prescribed. . . . The operation . . . of any tools, machinery, or equipment . . . under, over, by or near high-voltage lines, is hereby expressly prohibited, if at any time during such operation . . . it is possible to bring such equipment . . . within 6 feet of such high-voltage lines," except where described precautions have been taken.

Attached to the crane was a metal sign which read:
"California Industrial Accident Commission
Safety Order 7-5050-c
Unlawful to operate
this Equipment
within six (6) feet of
High Voltage Lines."

The commission found that "Said injury was proximately caused by the serious and wilful misconduct of the employer, consisting of violation of Section 7-5050 of the Electrical Safety Orders of the Industrial Accident Commission, in that they permitted the operation of a crane within 6' of high voltage wires."

In order to charge a corporate employer with serious

and wilful misconduct, the misconduct must be "on the part of an executive, managing officer, or general superintendent" of the corporation. (Lab. Code, § 4553, above quoted.) In the present case the foreman Sweet was the only supervisory employee of petitioner guilty of violation of the safety order. He and the members of his crew were the only employees of petitioner who were present at the site where the pipe was loaded. Sweet and Fulmer each testified that one Benner was the general superintendent of the construction job and that he (Benner) was "in charge of" Sweet. Neither Benner nor anyone else except Sweet gave any directions as to the placing of the truck crane. Therefore, unless Sweet himself was an "executive, managing officer, or general superintendent" of petitioner corporation, the finding that petitioner "permitted the operation of a crane within 6' of high voltage wires" cannot stand.

"An executive or managing officer" is "a person in the corporation's employ, either elected or appointed, who is invested with the *general conduct and control* at a particular place of the business of a corporation." (Italics added.) (*E. Clemens Horst Co.* v. *Industrial Acc. Com.* (1920), 184 Cal. 180, 190 [193 P. 105, 16 A.L.R. 611].) A "managing agent or a managing representative is one who has *general discretionary powers of direction and control*—one who may direct, control, conduct or carry on his employer's business or any part or branch thereof." (Italics added.) (*Gordon* v. *Industrial Acc. Com.* (1926), 199 Cal. 420, 427 [249 P. 849].) As stated in *Green* v. *Industrial Acc. Com.* (1933), 130 Cal.App. 337, 340 [19 P.2d 1029], "While the terms of the section [then § 6(b) of the Workmen's Compensation, Insurance and Safety Act, Stats. 1929, p. 430, on which is based Lab. Code, § 4553] have been broadened with each amendment, the legislature has refrained from making the employer liable for the misconduct of every person exercising authority on the employer's behalf. On the contrary, the class of persons whose misconduct will result in the imposition of such liability still remains limited."

From the factual situations of the following cases it is apparent that it is the investing of a supervisory employee with general discretionary powers of direction, and not the bestowal on him of the title "foreman," which determines

whether he comes within the purview of section 4553 of the Labor Code.

In *Gordon* v. *Industrial Acc. Com.* (1926), *supra*, 199 Cal. 420, 427, "Schienle [the "foreman"] had full charge of the work of excavating the gravel out of the pit where the accident occurred. At times he was visited by both Russell [one of the copartners-employers] and Cobb [the "general superintendent with general charge of production"], who came to see how the work was getting along and often gave him instructions or suggestions as to the manner of operation of the plant. At all other times, however, he was in full charge and control of the operations exercising his own discretionary powers as to the operation of the cable and the bucket and as to the time, place and circumstances under which the work of blasting the rock and sides of the pit was carried on. On the morning of the accident neither of his superior officers had been at the pit, and Schienle had been in full charge and control of the work, and he alone gave the orders to the workmen which resulted in the accident. Under such circumstances we are satisfied the evidence fully justifies the finding of the respondent Commission that Schienle was a "managing representative.'"

In *Church etc. Saints* v. *Industrial Acc. Com.* (1927), 86 Cal.App. 182, 183-185 [260 P. 578], "the misconduct was that of one Taylor, who occupied a position in relation to the work, of such description that at least he was foreman in charge of the work in which Barnes [the injured employee] was occupied at the time of the accident. Barnes was hired by Taylor. . . . Taylor was foreman in charge of the construction of the scaffold and in the direction of the work of Barnes, at the time when the plank broke, and was in charge of the construction as well as the work that was carried on upon the platform. . . . Taylor hired men to work on the job and was actually present on the job and supervising it; . . . the superintendency by Taylor was general in its nature and covered the actual work of construction . . ." He was responsible only to one Nowell, the "architect and contractor." It was held that Taylor was a "general superintendent."

The "foreman of the carpenter department" was held to be a "managing officer" in *First Nat. Pictures, Inc.*, v. *Industrial Acc. Com.* (1927), 87 Cal.App. 537 [262 P. 38]; and in *General P. Corp.* v. *Industrial Acc. Com.* (1928), 90 Cal.App. 101 [265 P. 508], the court upheld the finding of the commis-

sion that the foreman in charge of making a "change in a gasoline pipe-line" was an "executive or managing foreman, or general superintendent" of the employer. In neither case was there any discussion of the extent of the "general discretionary powers of direction" of the foreman.

In *Green* v. *Industrial Acc. Com.* (1933), *supra*, 130 Cal. App. 337, 340, it was held that one Cordova, an "assistant foreman" who worked with and directed two other men, was not a "managing officer." "At the place of operation Cordova was only in charge of his small portion of detail and there was *in active charge* an authority over him, the foreman."

In *California Shipbuilding Corp.* v. *Industrial Acc. Com.* (1944), 64 Cal.App.2d 622, 628 [149 P.2d 432], it was held that "The stage-rigger formen [on a ship construction job] were undoubtedly 'managing officers' within the meaning of section 4553 of the Labor Code. They had the responsibility of erecting staging to keep up with the progress of the construction work and to see that it followed a routine procedure or pattern. They received no orders from superiors and required none. If they were not 'managing officers' of their own department of the work, that department, so far as the record discloses, had no immediate managing officer."

In *Bethlehem Steel Co.* v. *Industrial Acc. Com.* (1944), 23 Cal.2d 659, 669-670 [145 P.2d 583], this court upheld an award of the commission based on a finding that petitioner corporation was guilty of serious and wilful misconduct in violating a safety order and stated that "the commission may well have concluded that the acts of misconduct charged against petitioner were those of its admitted superintendent . . . who was actively supervising the job in question, who made frequent tours of inspection, and who was familiar with the safety order, who knew that it was not being observed. . . ."

Here, Sweet's supervisory authority was limited to the direction of the crew of one truck crane. That crew was employed in performing a specifically directed operation (loading certain pipe onto a trailer) which was only a single detail of the work which was in progress. Sweet did not have general supervision over truck cranes, or crane crews, or loading operations. None of the other workers and other crews on the construction job—carpenters, electricians, plumbers, steel

construction men, etc.—were under his direction. He testified that he "received orders all day long." Such orders did not come solely and directly from the general superintendent, Benner, for the order under which he was acting at the time of the accident came from Chamberlain. Sweet did not have charge of a "part or branch" of his employer's business comparable to the excavation of an entire gravel pit or the erection of an entire building. It cannot be said that the single truck crane, operating under the conditions related, was a "department" over which he had authority. Manifestly he was an employee occupying a relatively inferior and subservient position. In the circumstances we are of the opinion that the evidence does not support the implied finding of the commission that such minor supervisory employee, Sweet, was an "executive, managing officer, or general superintendent" of petitioner.

The award of additional compensation against petitioner is annulled.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Traynor, J., concurred.