[Civ. No. 15248. Fourth Dist., Div. Two. June 11, 1976.]

ROBERT G. JORDAN, Plaintiff and Appellant, v.
CONSOLIDATED MUTUAL INSURANCE COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Garber, Sokoloff & Van Dyke, Gerald Sokoloff and Leonard Sacks for Plaintiff and Appellant.

Moore, Graves & Madory, Robert J. Graves, Shield & Smith and Theodore P. Shield for Defendants and Respondents.

**OPINION**

**KAUFMAN, Acting P. J.**—Plaintiff suffered serious bodily injuries when a 1965 Corvette automobile driven by Gary Donald Lewis collided with plaintiff's car. Lewis, the driver of the Corvette, was killed in the collision. He had been the managing employee of John's Gulf Station in Brea, where Gary M. Gregory, the owner of the Corvette, had left it for repair.

Prior to commencing the present action, plaintiff prosecuted an action against the estate of Gary Lewis, John Compton, the proprietor of John's Gulf Station, and Gary M. Gregory, the owner of the Corvette. In that action, after trial by jury, plaintiff was awarded a judgment against the estate of Gary Lewis in the amount of $55,000 together with costs. However, verdicts and judgment were rendered in favor of Gregory and Compton. Plaintiff instituted this action against Consolidated Mutual Insurance Company (hereafter "Consolidated"), Gregory's automobile liability insurance carrier, and Truck Insurance Exchange (hereafter "Truck"),[1] Compton's insurer under a garage operator's package policy, seeking to establish that Gary Lewis was an additional insured under each policy and that each carrier is liable for the payment of plaintiff's $55,000 judgment against the estate of Gary Lewis. Upon trial to the court without jury, the court determined that neither insurance policy covered Gary Lewis and entered judgment in favor of both Consolidated and Truck. Plaintiff appeals from the judgment.

---

[1]Truck Insurance Exchange was originally sued and served as Farmers Insurance Group.

*The Evidence*

John Compton, the proprietor of John's Gulf Station in Brea, operated another service station in Corona and left Gary Lewis in complete charge of the service station in Brea. Lewis took care of all the paper work at the Brea station, wrote checks and deposited the receipts. He had authority to hire and fire anybody he wanted. Compton visited the Brea station only about twice a week. Gary Lewis performed most of the mechanics work at the station. His father, Ed Lewis, was also employed at John's Gulf Station. His duties related mostly to the pumping of gasoline.

On the afternoon of March 20, 1969, Gary Gregory drove his 1965 Corvette automobile to John's Gulf Station to have it tuned up. Gregory remained on the premises while Gary Lewis was performing the tune-up and engaged in small talk with Lewis. When Gary Lewis finished the tune-up, Gregory advised him that the Corvette had a muffler that was rattling and asked Gary Lewis to check it out. Lewis did so and advised Gregory that he needed a new muffler or muffler pipe. Lewis was unable to get the part that day, but stated that he could get it the next day. Gregory said he would bring the car back the next day. Gregory also asked Lewis to check out the cause of another problem he was having, an electrical drain.

Gregory brought the Corvette back the next day, March 21, 1969. He instructed Gary Lewis to repair the muffler and check the electrical drain over the weekend and stated that he would pick up the car on Sunday, March 23, 1969. It was agreed that, if Gregory did not return by 8 p.m. on Sunday, Gary Lewis would leave the car outside the station with the keys on a front tire. Gregory thereupon turned the car and keys over to Gary Lewis. He did not instruct Lewis not to drive the car. He left it to Gary Lewis to find and fix the things he wanted done. Gregory's conversation with Lewis on March 21 was of brief duration inasmuch as Gregory was to catch a plane to Lake Tahoe where he planned to spend the weekend.

Ed Lewis, Gary Lewis' father, was on the premises of the Brea service station on both of the occasions when Gregory brought his Corvette in. Ed Lewis testified[2] that he overheard part of the conversation between his son and Gregory on the first occasion, and the substance of the

---

[2] Ed Lewis' testimony was received in the form of a transcript of his testimony at the personal injury trial.

conversation was the possible sale of the Corvette by Gregory to Gary Lewis. Gregory told Gary Lewis that he would bring the car back on the weekend and leave it for other repairs, at which time Lewis could take it for a test drive. When Gregory departed the first day, Gary Lewis discussed with Ed Lewis the advisability of purchasing the car. When he returned to the station the next day, Gregory told Gary Lewis that he had all weekend to put the tailpipe on and to take the car out for a test drive.

Later on the night of March 21, 1969, Ed Lewis agreed to meet Gary Lewis at a tavern in Buena Park. Ed Lewis awaited his son outside the tavern. He saw his son driving the Corvette and remonstrated with him about driving the car. Gary Lewis replied that he had permission to do so. Ed Lewis stated that that was no time to drive a customer's car. Gary Lewis replied that he was trying it out. Thereafter the Lewises entered the tavern and had a couple of drinks. They thereafter left the tavern, and, subsequently, the ill-fated collision occurred at about 1:30 a.m. on March 22, 1969.

Gary Gregory, who by happenstance was an employee of Consolidated, denied that he was interested in selling the Corvette, denied that he discussed its sale to Gary Lewis, denied that he gave Gary Lewis permission to drive the car and testified that he had no discussion at all with Gary Lewis respecting whether he would or would not drive the Corvette. Gregory knew, of course, that the Corvette would have to be driven in and about the service station.

John Compton testified that, after the accident, Gary Gregory admitted that he had given Gary Lewis permission to drive the Corvette. He testified that in a subsequent conversation with Gregory, Gregory told him that his insurance company (Consolidated) was not too happy about the foregoing admission, and then Gregory denied that he had given Lewis permission. Compton also confirmed that Gary Lewis had told him that he was thinking of buying Gregory's Corvette.

There was also evidence that Gary Lewis and John Compton had discussed the possibility of entering into a partnership. It was further established that the normal hours of operation of the Brea service station were 7 a.m. to 9 p.m. and that the station closed at or about 9 p.m. on March 21, 1969.

*Findings of Fact and Proposed Findings of Fact*

Among others, the trial court made the following findings of fact: Gary Lewis was an employee of John Compton doing business as John's Gulf Station on March 22, 1969; Gary Lewis was not a partner of John Compton; Gary Lewis was operating the Corvette automobile at the time and place of the accident without the permission, express or implied, of Gary Gregory or John Compton or anyone else; Gary Lewis was not in the course and scope of his employment at the time and place of the accident; Gary Lewis was not road-testing the Corvette automobile at the time of the accident, nor was he performing any duty for the benefit of John Compton or for Gary Gregory or as agent of either John Compton or Gary Gregory at the time of the accident.

Plaintiff objected to the proposed findings of fact and requested special findings including, among others, the following: Gary Gregory gave Gary Lewis permission to drive the Corvette in and around John's Gulf service station; Gary Gregory admitted to John Compton that he had given Gary Lewis permission to drive the Corvette; Gary Lewis had told Gregory that he was interested in purchasing the Corvette; Gregory told Gary Lewis that he could take the Corvette out for a test drive; Gary Lewis was using the Corvette reasonably believing he had the implied permission of Gregory to do so; and on March 22, 1969, Gary Lewis was an "executive officer" of the business known as John's Gulf Station.

## The Appeal as to Consolidated

The Consolidated policy is a more or less standard automobile insurance policy describing the 1965 Corvette as the vehicle principally insured and covering Gary Gregory as the named insured for, among other things, liability for bodily injury and property damage. The policy limits for bodily injury liability were $100,000 for each person and $300,000 for each occurrence. The policy period was one year commencing March 31, 1968. The policy defined the persons insured as "(1) the named insured and any resident of the same household, (2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is *within the scope of such permission* . . . ." (Italics added.)[3]

---

[3]The clause numbered (2) is generally called an "omnibus clause." (See, e.g., *Jurd* v. *Pacific Indemnity Co.*, 57 Cal.2d 699, 703, 704 [21 Cal.Rptr. 793, 371 P.2d 569]; *Uber* v. *Ohio Casualty Ins. Co.*, 247 Cal.App.2d 611, 613, 616 [55 Cal.Rptr. 720].)

Plaintiff contends that insofar as the policy purports to restrict coverage of permissive users to those operating or using the Corvette "within the scope of such permission" it is against public policy and ineffective; that the evidence establishes as a matter of law that Gary Lewis was driving the Corvette at the time and place of the accident with the permission of Gary Gregory; further, that coverage attaches if Gary Lewis reasonably believed he had the permission of Gregory to drive the vehicle; and that the court committed reversible error in refusing to make findings on the subjects of plaintiff's requested special findings.

Consolidated's brief does not, for the most part, respond to plaintiff's contentions. Rather, Consolidated sidesteps plaintiff's arguments and contends that the court's finding that Gary Lewis was not driving the Corvette at the time and place of the accident with the permission of Gary Gregory is a finding of ultimate fact supported by substantial evidence and that the trial court was not required to make findings on evidentiary facts such as those requested by plaintiff.

*Coverage As a Matter of Law*

■ Plaintiff argues: (1) that the undisputed evidence establishes that Gary Gregory delivered the Corvette to Gary Lewis for the weekend and turned over to him the ignition key without any express prohibition against driving the vehicle and with the understanding that the car would be left outside the station if Gregory did not retrieve it before 8 p.m. on Sunday, thus giving Lewis at least implied permission to drive the Corvette in and about the station and (2) that this permission was sufficient to constitute Gary Lewis an insured permissive user at the time and place of the accident notwithstanding that at that time and place Lewis was acting in excess of the scope of permission and beyond any permission contemplated by Gregory. Plaintiff's first argument is meritorious. Even viewing the evidence most favorably to defendants the only reasonable inference to be drawn is that Gary Lewis had implied permission to operate the Corvette in and about the service station, and the trial court should have so found.

Whether plaintiff's second argument is correct depends upon the answer to several other questions: (1) Is the provision in the Consolidated policy purporting to restrict the class of insured permissive users to those driving within the scope of the permission given, valid and effective; if not, (2) which of three generally recognized rules of

application is to be utilized as to the omnibus clause (see fn. 3, *ante*) of the Consolidated policy?

The answer to the second of the foregoing questions, in turn, revolves around the answer to several sub-questions: (1) What is the rule followed in California as to the similar question of vicarious ownership liability under Vehicle Code section 17150; (2) is that rule to be utilized in the construction and application of the omnibus clause mandated by Insurance Code section 11580.1 as it existed at the policy date; if not, (3) which of the three recognized rules is most consistent with the public policy of this state?

*Validity of the "Within the Scope*
*of Permission" Provision*

Insurance Code section 11580.1 as it presently exists[4] provides in part: "(a) No policy of automobile liability insurance described in Section 16054 of the Vehicle Code covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be issued or delivered in this state on or after the effective date of this section unless it contains the provisions set forth in subdivision (b). . . .

"(b) Every policy of automobile liability insurance to which subdivision (a) applies shall contain all of the following provisions:

". . . . . . . . . . . . . . . . . .

"(4) Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or *with his permission, express or implied, and within the scope of such permission . . . .*" (Italics added.)

If, therefore, Consolidated's policy were governed by section 11580.1 as it presently exists, there could be no question but that its restriction on permissive users to those acting within the scope of the permission granted would be valid.

---

[4]Insurance Code section 11580.1 was repealed and reenacted in 1970, (Stats. 1970, ch. 300, §§ 3, 4, p. 573), amended in 1971 (Stats. 1971, ch. 1564, § 3, pp. 3135-3137), 1974 (Stats. 1974, ch. 1409, § 2, p. 3086, and 1975 (Stats. 1975, ch. 194, § 1, pp. 559-562).

Unfortunately for Consolidated such is not the case. ▉ "It is well settled that insurance policies are governed by the statutory and decisional law in force at the time the policy is issued." (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.,* 58 Cal.2d 142, 148 [23 Cal.Rptr. 592, 373 P.2d 640]; see also *Wildman* v. *Government Employees' Ins. Co.,* 48 Cal.2d 31, 39 [307 P.2d 359].) ▉ The effective date of the Consolidated policy was March 31, 1968, and it is, therefore, governed by Insurance Code, section 11580.1 as it then existed.

As of March 31, 1968, section 11580.1 provided in pertinent part: "No policy of liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be issued or delivered in this state . . . unless it contains the following provisions:

" . . . . . . . . . . . . . . . . .

"(d) Provision insuring the insured named therein and *to the same extent that coverage is afforded such named insured* in respect to said described motor vehicles, *any other person using,* or legally responsible for the use of *said motor vehicles,* provided the motor vehicles are being used by the named insured or *with his permission, express or implied."* (Italics added.) (Stats. 1965, ch. 1968, § 1, p. 4496.)

Insurance Code section 11580.1 as it existed on the effective date of Consolidated's policy did not permit the restriction of insured permissive users to those who were using within the scope of the permission given, and the provision in Consolidated's policy purporting to impose such restriction was invalid and ineffective. (*Metz* v. *Universal Underwriters Ins. Co.,* 10 Cal.3d 45, 52-53 [109 Cal.Rptr. 698, 513 P.2d 922]; *Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d at pp. 38-40; *Bonfils* v. *Pacific Auto. Ins. Co.,* 165 Cal.App.2d 152, 156-158 [331 P.2d 766].) Accordingly, we read the Consolidated policy as insuring any person operating an insured vehicle with the permission, express or implied, of the named insured.

*Recognized Rules Applicable to the Omnibus Clause*

The question presented is the effect of use of the insured vehicle by a permissive user in excess of permission given. "Courts faced with this question have adopted one of three views: (1) The liberal or so-called 'initial permission' rule that if a person has permission to use an automobile in the first instance, any subsequent use while it remains in

his possession though not within the contemplation of the parties is a permissive use within the terms of the omnibus clause; . . . (2) the moderate or 'minor deviation' rule that the permittee is covered under the omnibus clause so long as his deviation from the permissive use is minor in nature; [5] . . . and (3) the strict or 'conversion' rule that any deviation from the time, place or purpose specified by the person granting permission is sufficient to take the permittee outside coverage of the omnibus clause; . . ." (*Matits* v. *Nationwide Mutual Ins. Co., supra,* 166 A.2d at p. 347; see also *Odolecki* v. *Hartford Accident & Indemnity Company, supra,* 264 A.2d at p. 40; *Konrad* v. *Hartford Accident & Indemnity Company* (1956) 11 Ill.App.2d 503 [137 N.E.2d 855, 861]; Annots.: 72 A.L.R. 1375; 106 A.L.R. 1251; 126 A.L.R. 544; 5 A.L.R.2d 600.) The only limitation on the "initial permission" rule is that the subsequent use must not be equivalent to "theft or the like." (*Matits* v. *Nationwide Mutual Ins. Co., supra,* 166 A.2d at p. 349; *State Farm Mutual Auto. Ins. Co.* v. *Travelers Ins. Co.* (1970) 57 N.J. 174 [270 A.2d 625, 627].)

Explaining the "initial permission" rule, the court in *Konrad* stated: "When the named insured has initially once given permission to another person to use his motor vehicle but that person deviates from the permission granted, Illinois follows the so-called initial permission rule to the effect that the user need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is with 'permission', under the omnibus clause, though that use may be for a purpose not contemplated by the named insured when he parted with possession of the vehicle; if the original taking by the user is with the named insured's consent, every act of the user subsequent thereto while he is driving the vehicle is with the named insured's permission so far as the omnibus clause is concerned, assuming there is no termination of permission; a deviation from the permission is immaterial; the only essential thing is that permission be given in the first instance; the rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use; this is the view followed also in Connecticut, Louisiana, Massachu-

---

[5] At least one court has adopted what it referred to as the "gross deviation" rule. (*Ryan* v. *Western Pacific Insurance Company* (1965) 242 Ore. 84 [408 P.2d 84, 88].) We view the "gross deviation" rule as only the other side of the "minor deviation rule," i.e., the permittee is covered under the omnibus clause so long as his deviation is not a "gross deviation" from the permission granted. (See *Odolecki* v. *Hartford Accident & Indemnity Company* (1970) 55 N.J. 542 [264 A.2d 38, 40]; *Matits* v. *Nationwide Mutual Ins. Co.* (1960) 33 N.J. 488 [166 A.2d 345, 347, 348].)

setts, New Jersey, Tennessee, Wisconsin, and probably North Dakota, Oregon, Oklahoma, Florida, Indiana, and West Virginia, and is the weight of authority . . . ." (137 N.E.2d at p. 861.)

Surprisingly, which of these rules is followed in California has apparently not been decided.

### The Rule Under Vehicle Code Section 17150

Subject to the monetary limitations set forth in section 17151, Vehicle Code section 17150 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, . . . by any person using or operating the same *with the permission, express or implied,* of the owner." (Italics added.) The language in Vehicle Code section 17150 concerning permissive use is virtually the same as the language concerning permissive use in subdivision (d) of Insurance Code section 11580.1 as it existed on the effective date of the Consolidated policy, March 31, 1968, to wit, *"with his permission, express or implied."* (Italics added.) ■ As to deviations from the permission granted, the rule followed under Vehicle Code section 17150 (formerly Veh. Code, § 402, subd. (a) [Stats. 1951, ch. 1469, § 1, pp. 3447-3448]) is, therefore, of some interest. The rule is well stated in *Peterson* v. *Grieger, Inc.,* 57 Cal.2d 43, 52 [17 Cal.Rptr. 828, 367 P.2d 420]: "[W]here restrictions by the owner as to time, purpose, or area are involved, the owner's permission is considered terminated only where there has been a *substantial violation* of such restrictions." (Original italics.) The rule stated would appear to be in essence essentially the same as the "minor deviation" or "gross deviation" rule heretofore mentioned. (See fn. 5 and accompanying text, *ante.*)

### Applicability of Vehicle Code Section 17150
### Rule to the Omnibus Clause

■ Notwithstanding the similarity of the language contained in Vehicle Code section 17150 and Insurance Code section 11580.1, subdivision (b)(4) as it existed on March 31, 1968, our Supreme Court has held that the meaning of the word "permission" as used in Vehicle Code section 17150 is not the same as the word "permission" as used in the omnibus clause of an automobile liability policy. (*Jurd* v. *Pacific Indemnity Co., supra,* 57 Cal.2d at pp. 703-704; *Exchange Cas. & Surety Co.* v. *Scott,* 56 Cal.2d 613, 619-621 [15 Cal.Rptr. 897, 364 P.2d 833].) As

the court in *Jurd* explained: "Recently in *Exchange Cas. & Surety Co.* v. *Scott, supra,* 56 Cal.2d 613, it was held that an adjudication in favor of an automobile owner in an action under the imputed liability statute (former Veh. Code, § 402 [now Veh. Code, § 17150]) did not invoke the principle of collateral estoppel or res judicata on the question of the driver's permission within the language of the automobile owner's liability policy in a subsequent suit against the owner's insurer. Because the imputed liability statute 'must be construed in a manner not favoring imposition of liability on the otherwise nonnegligent owner' and 'uncertainties' in the language as to the intended coverage of an automobile insurance policy 'must be construed in favor of imposing liability on the insurer' (56 Cal.2d 619), the 'issue of permission to be decided' in the successive actions 'was different' commensurate with the 'opposing modes of construction' (56 Cal.2d 620). In this vein it was accordingly said that 'the scope of "permission" under such a policy may in certain situations be broader than the scope of "permission" under former section 402 [now § 17150], because a different rule of construction is applicable to the owner's liability statute than the construction of an automobile liability policy, and "permission" within the two contexts need not be construed in a similar manner' (56 Cal.2d 620-621)." (*Jurd* v. *Pacific Indemnity Co., supra,* 57 Cal.2d at pp. 703-704.) We conclude that the numerous cases interpreting the word permission as used in Vehicle Code section 17150 are not controlling of the interpretation of the word "permission" as used in Insurance Code section 11580.1 or in the omnibus clause of an automobile liability insurance policy.

*Which of the Recognized Rules Is Most*
*Consistent With the Public Policy of*
*California?*

In discussing this issue it must be borne in mind that the public policy with which we are concerned is that which existed at the time the Consolidated policy was issued. ■ "[A] contract, or provision in a contract, which contravenes public policy when made is not validated by a later statutory change in that public policy." (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra,* 58 Cal.2d at p. 148.)

■ In that connection it is worthy of reiteration that Insurance Code section 11580.1 as it existed on the effective date of Consolidated's policy contained no "within the scope of such permission" provision such as is found in the statute as presently worded.[6] The 1970 change in language,

---

[6]The "within the scope of permission" language was first added when the section was repealed and reenacted in 1970 (Stats. 1970, ch. 300, §§ 3, 4, pp. 573-574).

adding the "scope of permission" provision presumably bespeaks a legislative intent to change the meaning of the statute as it was previously worded. (*People* v. *Santa Fe Federal S. & L. Assn.,* 28 Cal.2d 675, 685 [171 P.2d 713]; *Loew's Inc.* v. *Byram,* 11 Cal.2d 746, 750 [82 P.2d 1].) The change in language would indicate that, prior to 1970, the statutorily required omnibus clause would make a permissive user an additional insured even if his use or operation of the vehicle were not within the scope of the permission granted.

The "initial permission" rule subserves a number of significant public policies. As the Supreme Court of New Jersey stated in *Odolecki* v. *Hartford Accident & Indemnity Company, supra,* 264 A.2d at pp. 40-42: "In *Matits* [*Matits* v. *Nationwide Mutual Ins. Co., supra,* 166 A.2d 345], we adopted the initial permission rule. It was our view that the minor deviation and conversion rules, which made coverage turn on the scope of permission given in the first instance, rendered coverage uncertain, fostered unnecessary litigation, and did not comport with New Jersey's legislative policy of assuring an available fund for the innocent victims of automobile accidents. [Citations omitted.] Accordingly, we held that if a person is given permission to use a motor vehicle in the first instance, *any* subsequent use short of an unlawful taking while it remains in his possession, is a permissive use within the standard omnibus clause in an automobile liability insurance policy regardless of any restrictions given by the named insured. . . . [Original italics.]

" . . . . . . . . . . . . . . . . . .

"Thus, *Baesler* [*Baesler* v. *Globe Indemnity Co.* (1960) 33 N.J. 148 (162 A.2d 854)] is not consistent with our announced policy of limiting litigation which turns on petty factual distinctions, particularly where these distinctions bear so little relationship to the subject of insurance coverage in the named insured's own mind. . . .

"A second and more important policy is that of assuring that all persons wrongfully injured have financially responsible persons to look to for damages. [Citation omitted.] In other words, a liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured." (See also *Konrad* v. *Hartford Accident & Indemnity Company, supra,* 137 N.E.2d at p. 861.)

The public policy of the State of California was, on the effective date of Consolidated's policy, much the same as that of New Jersey. The

inclusion of an omnibus clause in every policy of automobile liability insurance is statutorily mandated. (Ins. Code, § 11580.1.) ■ The omnibus clause is construed liberally to effectuate its purpose of broadening the coverage of automobile liability policies for the benefit of the public. (*Jurd* v. *Pacific Indemnity Co., supra,* 57 Cal.2d at pp. 704-705; *Uber* v. *Ohio Casualty Ins. Co., supra,* 247 Cal.App.2d at pp. 616-617.) ■ "[T]he *entire* automobile financial responsibility law must be liberally construed to foster its main objective of giving 'monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' " (Original italics.) (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra,* 58 Cal.2d at p. 153, quoting *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914]; accord: *Metz* v. *Universal Underwriters Ins. Co., supra,* 10 Cal.3d at p. 53.) ■ We hold, therefore, that the "initial permission" rule is the rule most consonant with the public policy of the State of California, at least as it existed on the effective date of Consolidated's policy and that, under that rule, the facts establish that Gary Lewis was an additional insured under the omnibus clause of the Consolidated policy as a matter of law.

Having so concluded, it is unnecessary to deal with plaintiff's other contentions in respect to Consolidated.

### THE APPEAL AS TO TRUCK

The Truck policy, entitled "the Sentinel," purports to be a "package" policy for service stations and repair garages. It includes some automobile liability coverage, but it also provides personal property casualty insurance and comprehensive liability coverage. The policy period is one year commencing November 27, 1968. The policy limits for bodily injury liability are $100,000 for each person and $300,000 for each occurrence. The named insured is John L. Compton dba John's Gulf Station.

On a page the heading of which reads "SECTION II—LIABILITY AND MEDICAL COVERAGE," under a heading entitled "PERSONS INSURED," the policy reads: "(b) with respect to the ownership, maintenance or use of an automobile, each of the following is an insured under coverages C [bodily injury liability] and D [property damage liability—auto] to the extent set forth below: (1) the named insured; (2) any partner or *executive officer* thereof, but with respect to a non-owned automobile

*only while such automobile is being used in the business of the named insured; . . . "* (Italics added.)

## Contentions

Plaintiff contends that Gary Lewis was an "executive officer" of the named insured, John L. Compton dba John's Gulf Station, and that, therefore, Lewis was an additional insured unless the clause "only while such automobile is being used in the business of the named insured" operates to eliminate coverage. The plaintiff asserts that an automobile which is turned over to a service station for the purpose of repairs or servicing is "being used" in the service station and repair business even if it was driven on a personal errand at the time of the accident. At best, argues plaintiff, the phrase is ambiguous and such ambiguity must, of course, be construed against insurance company. Plaintiff further contends that the purported restriction "only while such automobile is being used in the business of the named insured" is invalid and ineffective because "[s]aid purported exclusion, when coupled with a host of other bewildering, obscure and ambiguous exclusions, conditions and provisos contained in the subject policy" violates the requirements of subdivisions (b) and (c) of Insurance Code section 11580.1[7] requiring that "every

---

[7]Plaintiff mistakenly asserts that the version of Insurance Code section 11580.1 applicable to the Truck policy is that enacted in 1965 (Stats. 1965, ch. 1968, § 1, p. 4496, *ante,* p. 37). However, the statute was amended in 1968 (Stats. 1968, ch. 1314, § 2, p. 2482) and the 1968 amendment became effective November 13, 1968, about two weeks prior to the effective date of the Truck policy. The statute as amended in 1968 read in pertinent part:

"11580.1 No *policy of automobile liability insurance as provided in Section 16057 of the Vehicle Code* covering liability arising out of the ownership, maintenance or use of any motor vehicle . . . shall be issued or delivered by any insurer licensed in this state, upon any motor vehicle then principally garaged or principally used in this state unless it contains the following provisions:

". . . . . . . . . . . . . . . . . . . . . . .

"(b) Provision designating by explicit description or by appropriate reference all motor vehicles with respect to which coverage is intended to be granted.

"(c) Provision designating by explicit description the purposes of use of such motor vehicles with respect to which coverage is not intended to be granted.

"(d) Provision insuring the insured named therein and to the same extent that coverage is afforded such named insured in respect to said described motor vehicles, any other person using, or legally responsible for the use of, said motor vehicles, provided the motor vehicles are being used by the named insured or with his permission, express or implied.

". . . . . . . . . . . . . . . . . . . . . . .

"(f) Where two or more policies are applicable to the same loss and one of such policies affords coverage to a named insured engaged in selling, repairing, servicing, delivering, testing, road testing, parking, or storing automobiles, such policies may contain a provision that the insurance coverage applicable to such motor vehicles afforded a person other than the named insured or his agent or employee shall not be

policy of automobile liability insurance as provided in Section 16057 of the Vehicle Code designate 'by explicit description or by appropriate reference all motor vehicles with respect to which coverage is intended to be granted' and designate 'by explicit description the purposes of use of such motor vehicles with respect to which coverage is not intended to be granted.' " Further, in a supplemental letter brief filed with our permission, plaintiff contends that the restriction "only while such automobile is being used in the business of the named insured" is invalid as an impermissible restriction on liability arising out of the use by a permissive user pursuant to subdivision (d) of Insurance Code section 11580.1 as the same existed on the effective date of the Truck policy. (See fn. 7, *ante.*)

Truck asserts that it is questionable whether Gary Lewis was an "executive officer" of the sole proprietorship known as John's Gulf Station but, in any event, contends that the policy provision restricting liability resulting from the use of a nonowned automobile to "only while such automobile is being used in the business of the named insured" is plain, unambiguous and effective. Truck also contends that the issue whether Gary Lewis was acting within the course and scope of his employment at the time of the accident was negatively and finally adjudicated in the personal injury action which resulted in a judgment in favor of John L. Compton. Additionally, Truck contends that the findings of the trial court, which are supported by substantial evidence, establish that the nonowned automobile was not being used with the permission of the named insured, John L. Compton. Finally, Truck contends that even if it were to be held somehow that there was coverage under the Truck policy, the insurance afforded by the Truck policy was excess insurance and not primary insurance.

*Discussion*

Truck's contention that plaintiff is collaterally estopped from asserting that Gary Lewis was in the course and scope of his employment by the

applicable if there is any other valid and collectible insurance applicable to the same loss covering such person as a named insured or as an agent or employee of a named insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code; ...

"(g) Nothing in this section nor in Section 16057 or 16450 of the Vehicle Code shall be construed to constitute a homeowner's policy as an 'automobile liability policy' within the meaning of Section 16057 of said code nor as a 'motor vehicle liability policy' within the meaning of Section 16450 of said code, notwithstanding that such homeowner's policy may provide automobile or motor vehicle liability coverage on insured premises or the ways immediately adjoining." (Italics added.)

judgment in the personal injury action is incorrect but is of no consequence. Although Truck raised the issue in its answer, it apparently offered no proof at trial. (See 4 Witkin, Cal. Procedure (2d ed.) pp. 3298-3299.) The trial court made no finding on the issue of collateral estoppel and, apparently, Truck requested none. ▉ The defense of collateral estoppel must be proved or it is waived. (*Dillard* v. *McKnight,* 34 Cal.2d 209, 218-219 [209 P.2d 387, 11 A.L.R.2d 835]; *Estate of Landau,* 158 Cal.App.2d 176, 181 [322 P.2d 222].) Truck's waiver of the defense, however, is inconsequential, inasmuch as the court below found that Gary Lewis was not in the course and scope of his employment at the time and place of the accident, and this finding is supported by substantial evidence.

▉ Plaintiff's contention that the trial court should have made a finding as to whether or not Gary Lewis was an "executive officer" of the business known as John's Gulf Station is well founded. If Gary Lewis was such an "executive officer" he was an insured under the Truck policy if the Corvette automobile was "being used in the business of the named insured" on the occasion of the accident or if the quoted requirement is invalid as being violative of public policy under Insurance Code section 11580.1 as that section read on the effective date of the Truck policy (see fn. 7, *ante*).

▉ The Truck policy contains no definition of "executive officer." Both plaintiff and Truck refer us to cases discussing what constitutes an "executive officer" under Labor Code section 4553 dealing with serious and wilful misconduct of an employer. (E.g., *Bechtel etc. Corp.* v. *Ind. Acc. Com.,* 25 Cal.2d 171, 174-177 [153 P.2d 331]; *Simmons Co.* v. *Ind. Acc. Com.,* 70 Cal.App.2d 664, 668 [161 P.2d 702]; *Cal. Shipbuilding Corp.* v. *Ind. Acc. Com.,* 64 Cal.App.2d 622, 626-628 [149 P.2d 432].) While the *Bechtel* case and Truck both indicate that the term "executive officer" connotes a corporate form of business (25 Cal.2d at p. 174), we decline to restrict the meaning of that term as used in Truck's policy to a corporate form of business. As is apparent from the face of the insurance policy, Truck knew that John's Gulf Station was a sole proprietorship. We will not assume that Truck used language in its policy of insurance wholly inapplicable to the business insured. We therefore equate "executive officer" with managing representative or managing employee. ▉ "A 'managing agent or a managing representative is one who has *general discretionary powers of direction and control*—one who may direct, control, conduct or carry on his employer's business or any

part or branch thereof.' " (Original italics.) (*Bechtel etc. Corp.* v. *Ind. Acc. Com., supra,* 25 Cal.2d at p. 174; cf. Lab. Code, § 4553.)

 We cannot imply a finding in support of the judgment that Gary Lewis was not an "executive officer" of John's Gulf Station because plaintiff requested a specific finding on this point and the court made none. (Code Civ. Proc., § 634.) Moreover, the evidence establishes as a matter of law that Lewis was such "an executive officer." He was in complete charge of the service station; he took care of all the paper work, wrote checks and deposited the receipts; he had authority to hire and fire; and the owner, Compton, visited the station only about twice a week for short periods of time.

 We are thus led to confront the Truck policy provision that an "executive officer" is an insured under the policy "with respect to a non-owned automobile only while such automobile is being used in the business of the named insured." We are persuaded that the latter requirement is invalid as an impermissible restriction upon coverage of a permissive user.

Insurance Code section 11580.1 as it existed on November 27, 1968 required every "policy of automobile liability insurance" to which the statute applied to contain a provision affording coverage to a permissive user to the same extent that coverage is afforded the named insured. (See fn. 7, *ante,* subd. (d).) The Truck policy provision in question purports to cover the named insured whether or not "such automobile is being used in the business of the named insured," whereas coverage of an "executive officer" is restricted to those occasions on which "such automobile is being used in the business of the named insured." Clearly, the coverage afforded the named insured is greater than that purportedly extended to an "executive officer." Accordingly, the purported limitation is invalid. (*Metz* v. *Universal Underwriters Ins. Co., supra,* 10 Cal.3d at pp. 52-53; *Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d at pp. 38-40; *Bonfils* v. *Pacific Auto. Ins. Co., supra,* 165 Cal.App.2d at pp. 156-158.)

 The remaining question is whether the Truck policy was a "policy of automobile liability insurance as provided in Section 16057 of the Vehicle Code" within the meaning of Insurance Code section 11580.1 on the effective date of the Truck policy. We have concluded that it was.

As previously noted, the Truck policy is not just an automobile liability insurance policy. It includes automobile liability coverage, but it also provides personal property casualty insurance and comprehensive liability coverage.

We note at once that the reference in Insurance Code section 11580.1 to policies of automobile liability insurance "as provided in Section 16057 of the Vehicle Code" does not eliminate the Truck policy. The reference to Vehicle Code section 16057 simply indicates that the insurance policies referred to in Insurance Code section 11580.1 are those which can be used to satisfy the California Financial Responsibility Law. The Truck policy itself recognizes that it is such a policy. It provides: "When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law . . . ."

As it now exists subdivision (e) of Insurance Code section 11580.1 provides: "Nothing in this section or in Section 16057 or 16450 of the Vehicle Code shall be construed to constitute a homeowner's policy, personal and residence liability policy, personal and farm liability policy, general liability policy, comprehensive personal liability policy, manufacturers' and contractors' policy, premises liability policy, special multiperil policy, or any policy or endorsement where automobile liability coverage is offered as incidental to some other basic coverage as an 'automobile liability policy' within the meaning of . . . the Vehicle Code, notwithstanding that any such policy may provide automobile or motor vehicle liability coverage on insured premises or the ways immediately adjoining."

Even under the foregoing provision of the statute as it now exists, it is doubtful that the Truck policy would be excluded from the statute's coverage. The policy does not offer automobile liability coverage simply as incidental to some other basic coverage. The automobile liability coverage is extensive. Automobile liability coverage is not limited to the "insured premises or the ways immediately adjoining." Furthermore, although the quoted subdivision of the statute refers specifically to numerous types of insurance policies, it does not specifically mention a garage owner's package policy.

Moreover, the statute as it existed on November 27, 1968, the effective date of the Truck policy, did not exempt the extensive enumerated types of insurance as does the present statute. The only type of insurance specifically exempted by the statute as it then existed was "a homeowner's policy." (See fn. 7, *ante,* subd. (g).) The subsequent reenactment of the statute in 1970 to exclude the many types of insurance listed in subdivision (e), quoted above, presumably effected a change in the law and, presumably, was not just a change in language to disclose the legislative intent as it had existed from the beginning. ■ An amendment to a statute making a material change in its wording bespeaks a legislative intent to change the meaning of the prior statute. (*Loew's Inc.* v. *Byram, supra,* 11 Cal.2d at p. 750; *Smith* v. *Ricker,* 226 Cal.App.2d 96, 100-101 [37 Cal.Rptr. 769]; *Gallichotte* v. *California etc. Assn.,* 23 Cal.App.2d 570, 579 [74 P.2d 73, 535].) "The very fact of amendment evidences a desire to change the existing law." (*People* v. *Santa Fe Federal S. & L. Assn., supra,* 28 Cal.2d at p. 685.)

■ We conclude that the Truck policy was a "policy of automobile liability insurance as provided in Section 16057 of the Vehicle Code" within the meaning of Insurance Code section 11580.1 as it existed on the effective date of the Truck policy. (See fn. 7, *ante.*) Having so concluded we need not reach plaintiff's other contentions.

### *Primary—Excess Coverage*

■ Having concluded that plaintiff is entitled to recover under both the Consolidated and the Truck policies, we are brought to Truck's contention that its policy provides excess coverage only. This issue was not tried in the court below, and will not, therefore, be resolved by us for the first time on appeal.

### *Disposition*

The judgment in favor of Consolidated and Truck is reversed with directions to the trial court to enter judgment for plaintiff against both said defendants.

McDaniel, J., and Fogg, J.,* concurred.

Petitions for a rehearing were denied June 30, 1976, and respondents' petitions for a hearing by the Supreme Court were denied August 12, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.