Filed 6/12/13  Karty v. DePhilippis CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| JAMES KARTY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>RICHARD DePHILIPPIS,<br><br>    Defendant and Respondent. | D059554<br><br><br>(Super. Ct. No. 37-2009-00088978-<br> CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed.

David A. Kay for Plaintiff and Appellant.

Wright & L'Estrange, Robert C. Wright and Alexander T Gruft for Defendant and Respondent.

James Karty sued his employer, Richard DePhilippis, seeking to recover for a burn injury sustained while Karty was at work.  After Karty presented his case to a jury, DePhilippis moved for a nonsuit on the basis that Karty's tort action was barred by the

exclusive workers' compensation remedy.  (See Lab. Code,[1] § 3600.)  The trial court agreed and granted the motion.  Karty appeals.  We affirm.

FACTUAL AND PROCEDURAL SUMMARY

*Background*

On August 15, 2007, Karty was working as a waiter at Filippi's Pizza Grotto (Filippi's), a sole proprietorship owned by Richard DePhilippis.  At about 8:40 p.m., one of Filippi's pizza cooks, Marcos Sevilla, heated a pan in a 550-degree pizza oven before placing a pizza on the pan for Karty's order.  Because the pizza pans are generally cool, Karty picked up the pan with his uncovered hand intending to deliver it to a customer's table.  When he did so, Karty screamed and then dropped the pan.  Karty suffered serious and permanent burn injuries.  Shortly after the incident, Sevilla admitted he was responsible for the action, quit his job, and never returned to the restaurant.

In addition to receiving workers' compensation benefits, Karty sued his employer, DePhilippis, and two of Karty's coworkers, Sevilla and Gricelda Lopez.  Karty asserted two causes of action:  battery and intentional infliction of emotional distress.  Karty alleged that both Sevilla and Lopez "deliberately and with intent to injure [him] . . . heated up a pizza pan . . . with full knowledge of the almost-certain likelihood that when [Karty] touched the heated [pan], he would be burned."  Karty also alleged Lopez was a "managing agent" of Filippi's restaurant.  Karty sought to recover against DePhilippis based on two exceptions to workers' compensation exclusivity rules:  (1) section

---

[1]     All further statutory references are to the Labor Code.  The word "subdivision" will be omitted from the statutory references.

2

3602(b)(1), which provides for employer liability if the employee's injury is caused "by a willful physical assault by the employer" and (2) employer ratification principles.

Karty later dismissed the complaint against Lopez and Sevilla, and elected to pursue only his employer, DePhilippis, for tort damages. DePhilippis moved for summary judgment, arguing that workers' compensation exclusivity rules barred the lawsuit. The court (Judge David Oberholtzer) denied the motion. In its denial order, the court found that although there did not appear to be any evidence supporting Karty's ratification theory, there was a triable issue of fact on the section 3602(b)(1) theory based on Karty's claims that Lopez was a manager or supervisor. The matter was later reassigned to Judge William Dato for trial.

*Karty's Evidence Presented at Trial*

At trial, Karty's primary theory was that DePhilippis was liable based on the fact that Lopez "instigated" or "participated" in the burn incident, and Lopez was a "managing agent" of the restaurant.

To support this theory, Karty presented evidence that although Lopez did not have a formal position as a manager or supervisor and never attended manager meetings, she was the "lead" night cook and functioned as the night kitchen manager for many practical purposes. According to Karty's evidence, the restaurant was generally managed by three individuals, Daniel Moceri (the general manager), and two other subordinate managers who worked mostly at night, Harriet Crivello and Alice Kirk. All of these managers had the full authority to manage all aspects of the business, including to hire, fire, discipline, and train employees, order food and other supplies, and set employee schedules. Moceri

3

was primarily responsible for hiring and supervising the kitchen staff, but the other two managers were responsible for the kitchen when Moceri was not at the restaurant.

Lopez was a senior kitchen employee who helped direct kitchen activities during the night shift. She frequently translated for the managers, and served as a point of contact for others in the restaurant who had problems relating to the kitchen, particularly with respect to pizza preparation. But unlike the managers, Lopez had no authority to engage in any restaurant management or supervisory tasks, including to hire, fire, discipline, or to set or change employee schedules.

At trial, Karty acknowledged that before his August 15 burn injury, there was substantial horseplay among the restaurant employees, including Karty, Lopez, and Sevilla. Karty and the other employees routinely engaged in practical jokes and other similar activities. For example, Karty frequently placed spoons in other employees' pockets and would throw small items at other employees, and the employees (including Karty and Lopez) would hit each other with menus and pizza boxes. Karty viewed these activities as innocent horseplay or "joking around" and did not believe these actions were hostile or improper. Within several days before the August 15 burn incident, Lopez put three dough balls into a pizza box and slammed it on Karty's head. Although manager Crivello saw the incident, she did not discipline Lopez or otherwise respond to the incident. Karty did not complain and there was no evidence this action was materially different from the normal horseplay activities. In his testimony, Karty agreed that before the burning incident he considered Lopez to be a "good co-worker" and a "nice person."

4

According to Karty's evidence, on the evening of August 15, Sevilla was the person who placed the pizza on the hot tray for Karty's order, knowing that Karty would pick up the tray with his bare hand. After Karty picked up the pizza pan and severely burned his hand, he was in extreme pain and put his hand in a pitcher of ice water. As he was doing so, Karty saw Lopez and several other employees laughing. Although both restaurant night managers (Crivello and Kirk) were on a work errand when the incident occurred, they soon returned and drove Karty to urgent care. When the urgent care nurse asked what happened, Karty responded that the other employees "played a trick on me or a joke." Karty later repeated to his doctor that his coworkers had played a joke on him and handed him a hot pan that he thought was cold.

Shortly after the incident, Sevilla admitted responsibility and quit his job. Later that evening, manager Crivello told all the kitchen employees to stay at the restaurant after closing time for a meeting. During the meeting, Crivello was angry and said that this conduct would not be tolerated. The employees responded: "[W]hat are you yelling at us for? We didn't do it. Marcos [Sevilla] did it." Lopez denied any involvement in the incident, and said she did not see the incident because she was in the back bringing out cheese. Crivello did not receive any information that anyone was responsible for the incident except for Sevilla.

About one month later, Karty returned to work and told Crivello he did not want to continue working with Lopez. Crivello responded that she could not fire Lopez because there was no evidence that Lopez was involved in the burn incident. But Crivello

5

arranged the shifts so the two would not work together. At the time of trial, both Karty and Lopez were still working at Filippi's.

At trial, a former Filippi's employee (Isaac Miguel) testified regarding statements made by Sevilla and Lopez before Karty's burn injury. Miguel testified that about two weeks before the burn incident, he heard Sevilla say to Lopez, " 'Hey if, [Karty] start[s] playing again [in the kitchen], I'm going to burn him.' " According to Miguel, Lopez responded " 'Burn the motherfucker. He deserve it. So he can stop playing with us.' " Miguel said he heard Lopez say this numerous times, "[l]ike every day," mostly at the beginning of his shift and at about 9:00 p.m. or 10:00 p.m. After Karty was injured, Miguel heard Lopez "saying that [Karty] deserve[d] it" because "he was playing too much."

However, there was no evidence that DePhilippis or any of the restaurant managers heard any of these statements or that Miguel communicated any of the statements to Filippi's management.[2]

*Nonsuit Motion*

After Karty completed his presentation of his case, DePhilippis moved for a nonsuit based on his argument that workers' compensation was the exclusive remedy for Karty's injuries. In response, Karty argued that Lopez was a manager who encouraged and/or directed the burn incident and thus her actions could be attributed to the employer

---

[2] The record indicates the first time DePhilippis became aware of Miguel's claims was when Karty filed Miguel's declaration in response to DePhilippis's summary judgment motion.

for civil liability purposes. After considering the parties' supplemental briefs on the legal issues and holding a hearing, the court granted the nonsuit motion, finding that although Karty presented evidence sufficient to establish that Lopez " 'participated in a "willful physical assault" on Karty,' " Lopez's involvement did not establish an exception to the workers' compensation exclusive remedy rules.

DISCUSSION

## I. *Review Standard*

We review a grant of a nonsuit motion under a de novo review standard. (*Curtis v. Santa Clara Valley Medical Center* (2003) 110 Cal.App.4th 796, 800.) A nonsuit is proper only if the defendant shows entitlement to judgment as a matter of law assuming all of the plaintiff's evidence to be true. (*O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 347.) " ' "[A] trial court may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor. [Citations.] [¶] In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor. . . .' " [Citation.]' " (*Ibid.*)

7

II. *Karty's Tort Claims Are Barred by Workers' Compensation Exclusivity Rules*

A. *Overview*

Generally, an employee suffering an injury during the course and scope of his or her employment is limited to recovery provided by the workers' compensation system. (§§ 3600(a), 3602(a); *Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1001; *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 708.) The workers' compensation scheme is based on a " ' "presumed 'compensation bargain' " ' " between the employee and employer, in which an employee receives swift relief regardless of fault while giving up the wider range of potentially available tort damages. (*Torres, supra*, at p. 1001.) Thus, courts broadly construe the exclusivity provisions and narrowly interpret exceptions to those provisions. (See *Soares v. City of Oakland* (1992) 9 Cal.App.4th 1822, 1830.)

Karty acknowledges his injuries were suffered while in the course and scope of his employment, but argues he presented evidence supporting two exceptions to the rule: (1) an exception embodied in section 3602(b)(1) pertaining to injuries "proximately caused by a willful physical assault by the employer"; and (2) employer ratification of an employee's intentional misconduct. We conclude neither of these exceptions apply on the factual record before us.

B. *Section 3602(b)(1) Exception*

Section 3602(b)(1) creates an express exception to the workers' compensation exclusivity rules "[w]here the employee's injury or death is proximately caused by a willful physical assault *by the employer*." (Italics added.) Under the undisputed facts, DePhilippis was Karty's *employer* as defined in the Labor Code. (See § 3300(c).) Karty

8

presented no evidence that DePhilippis committed a physical assault or had any involvement or knowledge of the burn incident, or that Lopez or Sevilla was acting on his behalf in committing the claimed assault.  Because there was no evidence that DePhilippis (or someone on his behalf) engaged in the misconduct, the section 3602(b)(1) exception is inapplicable.

As his primary appellate argument, Karty urges us to construe the term "employer" under section 3602(b)(1) to include vicarious liability concepts.  Karty notes that under California law, an employer may be held vicariously liable for torts committed by an employee within the scope of employment (see *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208), and this respondeat superior liability may extend to "an employee's willful, malicious and even criminal torts . . . even though the employer has not authorized the employee to commit crimes or intentional torts."  (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296-297.)  Karty thus argues that an employee is not limited to the workers' compensation remedy when a coemployee commits an intentional assault during the scope of his employment.

A California Court of Appeal rejected this same argument more than 10 years ago. (*Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1486-1489 (*Fretland*).) The *Fretland* court reasoned that physical acts of aggression by employees are the express subject of another statutory provision, section 3601.  Subdivision (a) of section 3601 states that workers' compensation is an employee's exclusive remedy for injuries caused by a coemployee acting within the scope of employment, *except* "[w]hen the injury or death is proximately caused by the willful and unprovoked physical act of

9

aggression of the other employee." (§ 3601(a)(1).) However, subdivision (b) of section 3601 states: "In no event . . . shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by the other employee under [the intentional coemployee assault] paragraph."

Reviewing these subdivisions of section 3601 together with section 3602(b)(1), the *Fretland* court concluded: "Section 3601, subdivision (b), unambiguously prohibits imposing civil liability on an employer for one employee's assault and battery of another. [¶] Applying the doctrine of respondeat superior as [the appellant] proposes, to expand the scope of the section 3602, subdivision (b)(1), exception to cover conduct committed by a coemployee, would directly violate section 3601, subdivision (b). To reconcile these two statutory provisions, liability under section 3602, subdivision (b)(1), must be based on positive misconduct by the employer and not on a theory of vicarious liability such as that which forms the basis of the doctrine of respondeat superior." (*Fretland, supra*, 69 Cal.App.4th at p. 1487.)

We agree with *Fretland*'s reasoning and conclusion.

None of the cases cited by Karty supports a contrary rule. For example, in *Meyer v. Graphic Arts International Union* (1978) 88 Cal.App.3d 176, the court reversed a judgment sustaining a demurrer on a complaint alleging employees, *acting as agents for the employer*, intentionally assaulted the employee. (*Id.* at p. 178.) This holding does not reflect a vicarious liability exception, and instead concerns an employer's *direct* liability for its own actions committed through its agents. (See *Arendell v. Auto Parts Club, Inc.* (1994) 29 Cal.App.4th 1261, 1265.) Moreover, *Meyer* was decided before section

10

3601(b) was enacted in its current form. Thus, as *Fretland* observed, the *Meyer* decision is unpersuasive because the court did not discuss or even mention section 3601(b). (*Fretland, supra*, 69 Cal.App.4th at pp. 1488-1489.)

Similarly, Karty's reliance on *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992 is misplaced. *Farmers* involved claims of sexual harassment between coemployees, rather than an intentional physical assault under section 3601(a)(1) or an act of aggression under section 3602(b)(1). (*Farmers, supra*, 11 Cal.4th at p. 998-1001.) Additionally, the *Farmers* court did not discuss any aspect of the workers' compensation exclusivity rule. A case is not authority for a proposition not considered therein. (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.)

Karty's reliance on *Herrick v. Quality Hotels, Inns & Resorts, Inc.* (1993) 19 Cal.App.4th 1608 (*Herrick*) is also unavailing. In *Herrick*, the court found the employer ratified the employee's misconduct based on facts showing the employer was aware of the assaultive conduct and failed to discipline or terminate the employee. (*Id.* at p. 1618.) As discussed below, there was no similar ratification evidence in this case.

Karty alternatively contends his employer (DePhilippis) may be held liable under section 3602(b)(1) based on Lopez's status as a managing agent or supervisor. However, exceptions to the workers' compensation exclusivity rules are strictly statutory. Section 3602(b)(1) refers only to an injury "caused by a willful physical assault by the *employer*." (Italics added). Under its plain meaning, this statutory exception does not extend to conduct by the supervisor or manager of a sole proprietor absent a showing of the employer's own positive misconduct.

11

Karty does not cite to any statutory language extending section 3602(b)(1) to supervisors or managers. Instead, Karty relies on section 4553, which provides for increased workers' compensation benefits when an employee's injury is caused by the *employer*'s "serious and willful misconduct." (§ 4553.) Section 4553 identifies three categories of employers and the persons whose misconduct may trigger the increased benefits under each category: (1) if the employer is an individual, the misconduct must be by the "employer" or "his managing representative"; (2) if the employer is a "partnership," the misconduct must be "on the part of one of the partners or a managing representative or general superintendent"; (3) if the employer is a corporation, the misconduct must be "on the part of an executive, managing officer, or general superintendent . . . ." (§ 4553(a), (b), (c).)

There is nothing in these statutory categories permitting a court to read section 4553's expanded scope of employer liability into section 3602(b)(1). The two statutes involve different concepts. Section 4553 concerns an employer's liability for increased workers' compensation benefits; whereas section 3602(b) sets forth exceptions to the workers' compensation exclusivity rules. The fact that both may be triggered by a form of employer misconduct does not mean the Legislature intended to define the scope of the misconduct in the same way. To the contrary, the express inclusion of the "managing representative" phrase in section 4553(a) and the omission of this phrase in section 3602(b)(1) indicates that the Legislature intended a different result with respect to a sole proprietorship. (See *People v. Athar* (2005) 36 Cal.4th 396, 409 ["[W]hen the Legislature uses a critical word or phrase in one statute, the omission of that word or

12

phrase in another statute dealing with the same general subject generally shows a different legislative intent."].) If the Legislature had intended the section 3602(b)(1) exception to apply to a managing representative or superintendent, we presume it would have used the same language as in section 4553(a) or section 4553(c).

Moreover, even if an assault by a "managing representative" creates an exception to the exclusivity provisions under section 3602(b)(1), Karty did not present evidence showing Lopez was a managing representative. Under section 4553, a " ' "managing agent or a managing representative is one who has *general discretionary powers of direction and control*—one who may direct, control, conduct or carry on his employer's business or any part or branch thereof." ' " (*Bigge Crane & Rigging Co. v. Workers' Comp. Appeals Bd.* (2010) 188 Cal.App.4th 1330, 1342; see *Bechtel McCone Parsons Corp. v. Industrial Acci. Com.* (1944) 25 Cal.2d 171, 174; *California Shipbuilding Corp. v. Industrial Acci. Com.* (1948) 85 Cal.App.2d 435, 437.) Under this definition, the class of persons whose misconduct triggers the enhanced section 4553 penalties is limited, and the statute is not triggered merely because a supervisor exercised some authority on the employer's behalf. (*Bechtel, supra*, at p. 174; *Bigge Crane, supra*, 188 Cal.App.4th at pp. 1342-1343.) "[T]he fact that a minor supervisory employee . . . provides direction to a handful of workers assigned to help with a specific task, does not make that employee a 'managing officer, or general superintendent' of the company." (*Bigge Crane, supra*, at p. 1345.)

Karty did not present evidence that Lopez fit within this definition of a managing representative. There was no evidence that Lopez exercised general discretionary power

13

of direction and control over Filippi's restaurant business, or even over the kitchen. DePhilippis never gave Lopez any power to supervise others or to make management decisions. Lopez had no authority to hire, fire or discipline the employees. She had no policymaking authority. There was always a manager (other than Lopez) supervising the restaurant, including the kitchen operations, even if the manager was sometimes briefly away from the premises.

Karty argues that a person can meet the definition of a "managing representative" even if he or she was not formally appointed to this position. However, there is no evidence Lopez had informal authority over the business. At most, she was the lead cook and made decisions regarding the kitchen work in the evenings, primarily involving the pizza-making operations. This evidence was insufficient to show Lopez was DePhilippis's managing representative. Additionally, contrary to Karty's assertions, the fact that DePhilippis relied on several managers to run the business (Moceri, Crivello, and Kirk) does not mean that Lopez—who was not a manager and had no managerial authority—was a managing representative.

## C. *Ratification Exception*

Karty additionally contends the court erred in granting the nonsuit because the evidence showed DePhilippis ratified Lopez's alleged misconduct.

The ratification doctrine provides an exception to the rule that an employer is not liable for a coemployee's assaultive conduct because ratification shows independent employer misconduct. (See *Fretland, supra*, 69 Cal.App.4th at pp. 1489-1491; *Herrick, supra*, 19 Cal.App.4th at p. 1618; *Hart v. National Mortgage & Land Co*. (1987) 189

14

Cal.App.3d 1420, 1432.) If an employer ratifies an employee's tortious conduct, the employer can become civilly liable for the tort as a joint participant. (*Fretland, supra*, 69 Cal.App.4th at pp. 1489-1490.)

The failure to discharge an employee after knowledge of his or her wrongful conduct may be evidence of ratification. (*Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 810; *Murillo v. Rite Stuff Foods, Inc.* (1998) 65 Cal.App.4th 833, 852.) "The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort. . . ." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 169; accord, *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1110.)

Karty did not present sufficient evidence to show ratification because there was no evidence that DePhilippis or any of his managers were aware that Lopez had any responsibility for Karty's burn injuries or that Lopez was involved in any inappropriate assaultive conduct towards Karty. The undisputed facts show a restaurant manager questioned the employees after the incident, and the only information obtained was that Sevilla was responsible for placing the hot tray for Karty's order. Although Miguel testified at trial that he heard Lopez encouraging and/or directing Sevilla to "burn" Karty, Miguel conceded that no manager heard these statements and there was no evidence Miguel ever reported the statements to management or anyone else. An employer cannot be held liable for ratification by failing to discipline or terminate an employee if there is no evidence the employer was aware of that employee's misconduct.

Karty acknowledges "the issue of ratification depends on what the employer knew at the time of the ratifying behavior . . . ." However, he argues DePhilippis was aware of Lopez's involvement because several days before Karty sustained the burn injuries, one manager saw Lopez hit Karty on the head with a pizza box containing three dough balls. At trial Karty described this pizza-box incident in response to his counsel's question regarding whether "[a]t any point did any of this [horseplay] escalate," but Karty presented no evidence that he complained about the incident or that he considered it to be materially different than the other normal horseplay activities. Similarly, the fact that Lopez allegedly laughed immediately after Karty was burned and that she may have been in the vicinity when Karty reached for the pizza pan, would not have reasonably disclosed to management that Lopez had any responsibility for the burn incident.

DePhilippis's failure to terminate or discipline Lopez for her alleged participation in the burn incident was insufficient to show ratification of the assaultive conduct because Karty did not present evidence showing DePhilippis or his managers were aware of Lopez's purported involvement in the incident. In reaching this conclusion, we recognize that before trial Judge Dato ruled that ratification was no longer an issue based on Judge Oberholtzer's earlier order denying DePhilippis's summary judgment motion. In that denial order, Judge Oberholtzer found no triable issues of fact on the ratification theory. However, this finding should not have precluded Karty from asserting the ratification theory at trial because Judge Oberholtzer's ruling was based solely on the summary judgment record. After a court denies a summary judgment motion, the parties are free to litigate all issues raised by the pleadings.

16

However, in his appellate briefs Karty does not challenge Judge Dato's pretrial ruling regarding the ratification theory. Thus, Karty has forfeited any challenge to this ruling on appeal. In any event, it appears that Karty had the opportunity to, and did, present all evidence relating to the ratification issue at trial, despite Judge Dato's earlier ruling. Thus, there is no basis to conclude the court's ruling on the ratification theory was prejudicial. We have determined based on our review of the entire record that there was no evidence of ratification, and Karty does not claim that he would have presented additional evidence but for Judge Dato's pretrial ruling on the ratification theory.

## DISPOSITION

Judgment affirmed. Appellant to bear respondent's costs on appeal.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.


17